**Hearing Date and Time:  August 6, 2021 at 10:00 a.m.**
**Objection Deadline:  July 30, 2021 at 4:00 p.m.**

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for 1526 52nd LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|   |   |
|---|---|
| In re: | : |
|  | : Chapter 11 |
| FIFTEEN TWENTY SIX FIFTY SECOND LLC, | : Case No.:  21-22397 (RDD) |
|  | : |
| Debtor. | : |
|  | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF MOTION OF 1526 52ND LLC TO DISMISS**
**THE DEBTOR'S CHAPTER 11 CASE AND FOR SANCTIONS**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion (the "Motion") of 1526 52nd LLC ("1526 LLC"), by its counsel, Rubin LLC, for entry of an order dismissing the above-captioned chapter 11 case of Fifteen Twenty Six Fifty Second LLC (the "Debtor") pursuant to 11 U.S.C. § 1112(b) and for sanctions shall be held before the Honorable Robert D. Drain, Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quorropas Street, White Plains, New York 10601 on **August 6, 2021 at 10:00 a.m.**, or as soon thereafter as counsel may be heard (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be held via Zoom Government.  Parties requiring active participant access must register appearances in advance on the Court's calendar webpage in advance of the Hearing.

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court, and shall be served upon (a) counsel for 1526 LLC, Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001 (Attn.: Paul A. Rubin); and (b) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **July 30, 2021 at 4:00 p.m.** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  New York, New York
　　　　July 16, 2021

RUBIN LLC

By:   */s/ Paul A. Rubin*
　　　　Paul A. Rubin
　　　　Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for 1526 52nd LLC*

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for 1526 52nd LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
FIFTEEN TWENTY SIX FIFTY SECOND LLC,    :    Case No.:  21-22397 (RDD)
                                                        :
            Debtor.                                     :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTION OF 1526 52ND LLC TO DISMISS THE
## DEBTOR'S CHAPTER 11 CASE AND FOR SANCTIONS

1526 52nd LLC ("<u>1526 LLC</u>"), by its counsel, Rubin LLC, submits this motion (the

"<u>Motion</u>") for entry of an order dismissing the above-captioned chapter 11 case of Fifteen Twenty

Six Fifty Second LLC (the "<u>Debtor</u>") pursuant to section 1112(b) of title 11 of the United States

Code (the "<u>Bankruptcy Code</u>") as a bad faith filing, and to impose sanctions on the Debtor, Bluma

Lefkowitz and Isaac Lefkowitz under section 105(a) of the Bankruptcy Code and/or Rule 9011 of

the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") for their improper and bad

faith conduct in connection with the above-captioned chapter 11 case.  In support of this Motion,

1526 LLC respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

1.      This Debtor, a brand new entity formed on June 28, 2021, took title to the Property three days later for no consideration, and six days after that, the Debtor filed this bankruptcy case. This happened while state court litigation commenced by 1526 LLC to quiet title over the Property had been pending in Kings County Supreme Court since 2018.

2.      1526 LLC purchased the Property in 2014 from Bluma Lefkowitz and Tova Greenbaum for consideration exceeding $4 million pursuant to a contract of sale and deed executed by Bluma Lefkowitz and Tova Greenbaum.  The Property is, and has been since 2014, the home of the sole member of 1526 LLC, Rivka Ashkenazi, her husband, and their eight children.  But in 2018, Bluma Lefkowitz, purporting to be a member of 1526 LLC, unilaterally and without consent of 1526 LLC or Rivka Ashkenazi, signed and filed a deed transferring the Property to herself for no consideration.

3.      After learning of the unauthorized transfer of the Property, 1526 LLC commenced a state court action against Bluma Lefkowitz (an insider of the Debtor) to quiet title, and for damages for fraud and conversion of the Property.  Bluma Lefkowitz has suffered several setbacks in this state court litigation, the latest in March and June of 2021 when the state court denied her motion for summary judgment and granted 1526 LLC's motion to extend the notice of pendency against the Property for an additional three years.  Despite the pendency of the quiet title action seeking to void her unauthorized transfer of the Ashkenazi home to herself, following these

---

[1] Capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to them herein.

setbacks, Bluma Lefkowitz transferred the Property again, for no consideration and without consent of 1526 LLC or Rivka Ashkenazki—this time to the Debtor.[2]

4.      The Debtor did not file this case due to financial distress or to restructure its debts. Indeed, the Debtor has no unsecured creditors. The Debtor's only creditor is the mortgagee whose lien encumbers the Property in which the Debtor has no legitimate interest. The Debtor was plainly created to receive the deed to the Property in order to facilitate commencement of this case so that Isaac (Jack) and Bluma Lefkowitz could sell the Property out from under the Ashkenazi family, and they could move the State Court Action out of Kings County. The Debtor bears every characteristic of new debtor syndrome, which establishes a prima facie case of a bad faith filing. These facts, together with the Debtor's blatant litigation tactic in seeking to move a two-party dispute already pending in the State Court for three years concerning the very issue of ownership of the Debtor's only alleged asset that just happened to be transferred to the Debtor less than one week before it filed bankruptcy, demonstrates that this case was filed in bad faith and should be dismissed for cause pursuant to section 1112(b) of the Bankruptcy Code.

5.      1526 LLC respectfully submits that the imposition of sanction is warranted for this abuse of the bankruptcy process.

## BACKGROUND

### The Purchase of the Property

6.      On or about April 1, 2014, Rivka Ashkenazi, as purchaser, entered into a *Contract of Sale* dated April 1, 2014 (together with all riders, the "Sale Contract") with Bluma Lefkowitz and Tova Greenbaum, as seller, for the sale of the residential property located at 1526 52nd Street,

---

[2] The transfers of the Property from 1526 LLC to Bluma Lefkowitz, and from Bluma Lefkowitz to the Debtor qualify as actual fraudulent transfers that are voidable under the New York Uniform Voidable Transactions Act. *See* NY DEBTOR & CREDITOR LAW §§ 273(a)(1) & (2); 273(b)(1), (2) & (4).

Brooklyn, New York 11219 (the "Property").  A copy of the Sale Contract is annexed hereto as

Exhibit A.  The total consideration for the Property was $4,025,000, comprised of the following:

- $2,025,000 purchase price for Property, of which $1,465,000 would be in the form of assumption of the mortgage debt encumbering the Property (the "Mortgage"); and

- $2,000,000 additional consideration for all furniture and fixtures at the Property, pursuant to the Additional Rider to the Sale Contract.

7.      These amounts are set forth in the Sale Contract itself and in contemporaneous

communications between the parties.  *See* Sale Contract ¶¶ 1, 2, Additional Rider ¶ 23; Emails

from Isaac Lefkowitz to Alexander Ashkenazi discussing the purchase price for the Property,

annexed hereto as Exhibit B.  The Sale Contract itself also provides for a closing date of on or

about July 1, 2014.  *See* Sale Contract ¶ 7.

8.      In connection with the purchase of the Property, the Ashkenazis delivered the down

payment of $560,000 (the $2,025,000 purchase price less Mortgage assumption) to the escrow

account of Rivka Ashkenazi's attorney for that transaction, Norman Seidenfeld.  Pursuant to the

terms of the Sale Contract, the $560,000 down payment was released on or about April 1, 2014,

prior to closing, and paid to various recipients as directed by Bluma and Isaac Lefkowitz.  *See*

Copies of checks disbursed by Mr. Seidenfeld from his escrow account totaling $560,000, annexed

hereto as Exhibit C.  The April 1, 2014 disbursement checks from Mr. Seidenfeld's escrow account

total $560,000, and they reference "1526 52nd St – Ashkenazi."

9.      Also pursuant to the Sale Contract, $440,000 of the $2,000,000 additional

consideration for all furniture and fixtures at the Property was to be paid on or before May 31,

2014.  *See* the Additional Rider to the Sale Contract.  In accordance with the Sale Contract, on or

about May 13, 2014, Mr. Seidenfeld disbursed two checks totaling $440,000 to recipients as

directed by Bluma and Isaac Lefkowitz.  *See* Copies of checks disbursed by Mr. Seidenfeld from

4

his escrow account totaling $440,000, annexed hereto as <u>Exhibit D</u>.  The May 31, 2014 disbursement checks reference "1526 52nd St – Ashkenazi."

10.    At the direction of Rivka Ashkenazi, Mr. Seidenfeld formed 1526 LLC on her behalf on or about July 9, 2014, to take title to the Property.  *See* Affirmation of Norman Seidenfeld dated December 4, 2018, filed in the State Court Action, ¶ 8, annexed hereto as <u>Exhibit E</u>.  Mr. Seidenfeld confirmed under penalty of perjury that Rivka Ashkenazi was the sole member of 1526 LLC, and there was never any agreement that either Bluma Lefkowitz or Tova Greenbaum were or would be members of 1526 LLC.  *See id.* at ¶ 9.  Indeed, it defies common sense that Bluma Lefkowitz or Tova Greenbaum (as sellers) would be members of an LLC to whom the Property was being sold.  Mr. Seidenfeld also confirmed that Bluma Lefkowitz and Tova Greenbaum executed the deed for the Property and he arranged for the deed to be recorded.  *See* Exhibit E, Affirmation of Norman Seidenfeld ¶ 10.

11.    The balance of the cash consideration for the purchase of the Property was made by wire and by checks to various recipients as directed by Bluma and Isaac Lefkowitz.  *See* Exhibit B; Email from Isaac Lefkowitz to Alexander Ashkenazi containing wire instructions, annexed hereto as <u>Exhibit F</u>.  All of the disbursements in connection with the purchase of the Property were confirmed by Isaac Lefkowitz in an email he sent to Rivka Alexander's husband, Alexander Ashkenazi, on July 20, 2014, with the subject line "1526 Cheshbon,"[3] containing an accounting of the sale transaction.  *See* Exhibit B.

12.    Because a component of the consideration for the purchase of the Property was the assumption of the Mortgage, on July 23, 2014, Isaac Lefkowitz emailed to Alexander Ashkenazi a proposed Post Closing Agreement memorializing the suggested terms of the payment of the

---

[3] Cheshbon is the Hebrew word for accounting.

Mortgage. *See* Email from Isaac Lefkowitz to Alexander Ashkenazi attaching Post Closing Agreement, annexed hereto as <u>Exhibit G</u>. Mr. Lefkowitz's draft Post Closing Agreement acknowledged that the Property "was sold by Bluma Lefkowitz and Tova Greenbaum (as nominal owners thereof with Jack [Isaac Lefkowitz] as the beneficial owner) to 1526 52nd LLC (which is beneficially owned by Alexander)." *See id.*

13.     The sale of the Property to 1526 LLC closed and on or about August 1, 2014, Bluma Lefkowitz and Tova Greenbaum signed the deed transferring title to 1526 LLC. All of the closing documents and ACRIS forms were executed by Rivka Ashkenazi as the member of 1526 LLC as purchaser, and by Bluma Lefkowitz and Tova Greenbaum as seller. *See* Exhibit E, Affirmation of Norman Seidenfeld ¶ 11.

14.     The transfer of the Property to 1526 LLC has all the indicia of a sale of real property from Bluma Lefkowitz and Tova Greenbaum to 1526 LLC, including for example, the following:

- Rivka Ashkenazi obtained title insurance in connection with the purchase of the Property. *See* Email from Mr. Seidenfeld to title insurance company employee (with Isaac Lefkowitz and Alexander Ashkenazi copied) procuring title insurance for 1526 LLC on the Property, annexed hereto as <u>Exhibit H</u>.

- The Sale Contract required the seller to remove all liens, fines, and penalties, other than the existing Mortgage. *See* Rider to Sale Contract ¶ 2.

- The Sale Contract provided that the plumbing, heating, and electrical systems would be in working order at closing. *See* Rider to Sale Contract ¶ 5(b).

- There was a closing date scheduled for on or about July 1, 2014. *See* Sale Contract ¶ 7.

- The parties exchanged correspondence regarding such matters as when the sellers would be completely vacated from the Property, the seller suggested that the buyer change the locks, the seller informed the buyer that the basement was cleaned out, and the seller requested that gas service be switched over to 1526 LLC's name. *See* Emails between the parties regarding the foregoing, annexed hereto as <u>Exhibit I</u>.

- Rivka Ashkenazi, her husband and their eight children moved into the Property and have been living, and continue to reside, at the Property as their primary residence.

15.     The facts surrounding 1526 LLC's purchase of the Property are fully corroborated by the Affirmation of Norman Seidenfeld, the real estate attorney for Rivka Ashkenazi for the sale transaction. *See* Exhibit E. Importantly, Mr. Seidenfeld confirms that the transaction at issue was a sale of the Property from Bluma Lefkowitz and Tova Greenbaum to Rivka Ashkenazi (through 1526 LLC); that the cash consideration for the purchase was paid; that 1526 LLC was formed for Rivka Ashkenazi; and that Bluma Lefkowitz and Tova Greenbaum have no interest in 1526 LLC.

**The Separate Vetcare Loan**

16.     Separate from the sale of the Property to 1526 LLC, in August 2014 Alexander Ashkenazi, his counsel, David Rothstein, Esq. and Isaac Lefkowitz engaged in discussions and negotiations regarding a loan from Alexander Ashkenazi to Isaac Lefkowitz's company, Vetcare Health, Inc. ("Vetcare"). Isaac Lefkowitz signed and delivered to David Rothstein a *Memorandum of Understanding* dated August 25, 2014 (the "Vetcare MOU") regarding the terms of a potential short term loan of $1 million. *See* Email from David Rothstein to Alexander Ashkenazi, attaching the Vetcare MOU, annexed hereto as Exhibit J.

17.     Before the agreement on the Vetcare loan transaction was finalized, Alexander Ashkenazi agreed to fund the loan. On September 12, 2014, Isaac Lefkowitz signed an acknowledgment of receipt of $750,000 as proceeds of the Vetcare loan, and referenced check numbers of the checks comprising the loan proceeds. *See* Acknowledgment of receipt of Vetcare proceeds, and copies of checks comprising the Vetcare loan proceeds, annexed hereto as Exhibit K. Those same checks were made payable to Vetcare and the checks were all deposited between September 15, 2014 and January 6, 2015. *See id.*

18.      Mr. Rothstein confirmed in his own affirmation that:  he was involved in the Vetcare loan transaction as Alexander Asheknazi's counsel from inception through funding; the Property was not collateral for the Vetcare loan, was not discussed at all in connection with the loan, and was never mentioned in any of the loan documents he prepared; and the Vetcare loan documents were not finalized and executed until late 2014.  *See* Affirmation of David Rothstein dated March 4, 2019, filed in the State Court Action, annexed hereto as Exhibit L.

19.      In sum, the documentary evidence shows that: (i) the Property was sold to the Ashkenazis through 1526 LLC; (ii) the consideration for the purchase of the Property was accounted for, acknowledged, and disbursed in April, May and June 2014; (iii) separately, the Vetcare loan was negotiated by different counsel for Alexander Ashkenazi, which discussions proceeded after the closing on the sale of the Property; (iv) the Property was not collateral for the Vetcare loan; and (v) the Vetcare loan proceeds were acknowledged in September 2014 and deposited thereafter.

20.      Nevertheless, Bluma and Isaac Lefkowitz and the Debtor have spun an extraordinary tale claiming that the Sale Contract was supposed to be a blank form to be held in escrow to serve as something they call "'unofficial' additional collateral" for the Vetcare loan.  *See* Declaration of Isaac Lefkowitz Pursuant to Local Bankruptcy Rule 1007-2 [ECF No. 2] ¶ 7.

21.      This non-sensical story would require the Court to ignore all of the documentary evidence, the sworn statement of the attorney for 1526 LLC for the purchase of the Property (Mr. Seidenfeld), and the sworn statement of the attorney for Alexander Ashkenazi for the Vetcare loan (Mr. Rothstein), and accept as true that: (i) the Ashkenazis paid $2,555,463 and assumed $1,465,000 in mortgage debt simply to hold the right to purchase the Property only if there would later be a default in a separate loan that had not yet been negotiated; (ii) the $560,000 from the

down payment check disbursements to the various recipients as directed by Bluma and Isaac Lefkowitz—which checks are notated "1526 52nd St. – Ashkenazi," and which total the exact same amount as the down payment provided for under the Sale Contract, which were disbursed by Rivka Ashkenazi's real estate attorney in connection with the sale transaction, and which were disbursed before any agreement with Vetcare was discussed—was in fact part of *a loan to Vetcare*, while at the same time (iii) an additional $750,000 in checks actually made out to Vetcare and acknowledged by Isaac Lefkowitz as proceeds from the $1 million loan to Vetcare, were ***not*** the loan proceeds to Vetcare.

22.    Additionally, the Lefkowitzs' story is predicated on the notion that the deed to the Property was required to be held in escrow, but no such escrow agreement has been produced.

**The State Court Action**

23.    Rivka Ashkenazi discovered that, approximately four years after the closing on the sale of the Property, on or about June 26, 2018, Bluma Lefkowitz had executed on behalf of 1526 LLC a deed transferring the Property back to herself, for no consideration. ***Bluma Lefkowitz did not have authority to execute any documents on behalf of 1526 LLC because she is not, and never was, a member of 1526 LLC***. As a result of this improper transfer, on July 31, 2018, 1526 LLC filed an action to quiet title, and for damages for fraud and conversion of the Property, which action was pending in the Supreme Court of the State of New York, Kings County (the "State Court") under index number 515379/2018 (the "State Court Action"), when the Debtor filed this case. Even after the commencement of the State Court Action, Bluma Lefkowitz audaciously continued to execute documents claiming to be the "Managing Member" of 1526 LLC. She even signed and recorded a corrective deed dated August 15, 2018, and days after 1526 LLC commenced the State Court Action against her, Bluma Lefkowitz signed and filed articles of

9

dissolution to purporting to dissolve 1526 LLC, the entity that Mr. Seidenfeld formed for and at

the request of his client, Rivka Ashkenazi.

24.     On September 13, 2018, Bluma Lefkowitz moved to dismiss the State Court Action.

On October 13, 2018, 1526 LLC moved by order to show cause to stay a landlord tenant

proceeding that Bluma Lefkowitz had commenced in Kings County Civil Court to evict Rivka

Ashkenazi and her family from the home for which they gave over $4 million in consideration.

By order dated December 19, 2018, the State Court denied Bluma Lefkowitz's motion to dismiss

and granted 1526 LLC's motion to stay the landlord tenant action.

25.     On November 16, 2020, Bluma Lefkowitz moved for summary judgment seeking

dismissal of the complaint in the State Court Action.  By decision and order dated March 23, 2021

(the "Summary Judgment Decision"), the State Court denied the motion for summary judgment.

A copy of the Summary Judgment Decision is annexed hereto as Exhibit M.  In denying summary

judgment, the State Court noted that "numerous material factual issues precluding summary

judgment exist regarding the alleged purchase as well as concerning the loan to Vetcare, such as

who are 1526's actual members *and who owns the premises*."  Summary Judgment Decision at 8

(emphasis added).

26.     By order dated June 9, 2021, the State Court granted 1526 LLC's order to show

cause to extend the notice of pendency against the Property for three more years, until July 27,

2024.

**The Unauthorized Transfer of the Property
to the Debtor and the Chapter 11 Case_____**

27.     Having suffered these various setbacks in the State Court, and with the prospect of

discovery taking place in the State Court Action, on or about July 1, 2021, Bluma Lefkowitz signed

yet another deed, this time transferring the Property from herself to the Debtor, for no consideration.  The Debtor had been formed only three days earlier, on June 28, 2021.

28.     According to Isaac Lefkowitz, the Property was transferred to the Debtor for "estate planning" purposes.  *See* Declaration of Isaac Lefkowitz Pursuant to Local Bankruptcy Rule 1007-2 ¶ 28.

29.     On July 7, 2021 (the "Petition Date"), less than a week after it received title to the Property from Bluma Lefkowitz for free, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Schedules of Assets and Liabilities and Statement of Financial Affair (collectively, the "Schedules") [ECF No. 1] do not list any assets, other than the Property, and no creditors other than the holder of the Mortgage encumbering the Property.

30.     On July 8, 2021, the Debtor filed in the United States District Court for the Eastern District of New York (the "EDNY") a notice of removal of the State Court Action, which was assigned case number 21-03838 (the "EDNY Action") and to United States District Court Judge Cogan.  Immediately after filing the notice of removal, the Debtor moved the EDNY to transfer the State Court Action to the Southern District of New York, and ultimately for automatic referral to this Court.

31.     In the EDNY Action, state court counsel for 1526 LLC requested a briefing schedule to respond to the Debtor's transfer request.  Significantly, on July 9, 2021, Judge Cogan entered the following docket notation:

> ORDER re: 6. The local rules of this Court provide a 14-day schedule for opposing motions, subject to such extensions as the Court may allow. That is the present briefing schedule. ***But the Court will tell the parties right now that it is inclined to stay this case, including the transfer motion, pending plaintiff's prompt filing and determination of a motion in the S.D.N.Y. bankruptcy court to dismiss the Chapter 11 case as a bad faith filing under***

> *the Bankruptcy Code*. Ordered by Judge Brian M. Cogan on 7/9/2021.
> (Weisberg, Peggy) (Entered: 07/09/2021)

EDNY Case No. 21-03838 July 9, 2021 docket text (emphasis added).   Thus, without any

prompting from 1526 LLC, Judge Cogan immediately recognized that this Court will need to

consider whether this case was filed in bad faith.

32.     On July 14, 2021, evidently displeased with Judge Cogan's *sua sponte* order, the

Debtor filed a "Notice of Withdrawal" of its notice of removal of the State Court Action, ***without***

***prejudice***.  This prompted the EDNY to issue the following docket notation:

> ORDER re: 9. There is no such thing as a notice of withdrawal of removal.
> The case was removed and it is unless and until the Court remands it. All
> involved parties can stipulate to a remand to be So Ordered, or any party
> can move for remand. But Fifteen Twenty Six needs to figure this out,
> because a lot of time is being wasted and its actions are getting close to
> requiring consideration of Rule 11 sanctions. Ordered by Judge Brian M.
> Cogan on 7/14/2021.

EDNY Case No. 21-03838 July 14, 2021 docket text.[4]

33.     Consistent with Judge Cogan's suggestion, 1526 LLC retained bankruptcy counsel

and promptly filed this Motion.

## **ARGUMENT**

34.     The Court should dismiss the Debtor's chapter 11 case for cause under section

1112(b) of the Bankruptcy Code as a bad faith filing, because the chapter 11 case has all the

---

[4] The Debtor's attempt to withdraw its notice of removal, ***without prejudice***, after the removed action was assigned to
a judge whose orders were not to the Debtor's liking, is emblematic of the litigation tactics the Debtor and its insiders
have employed since the onset of the litigation between the parties.  For example, Bluma Lefkowitz attempted to evict
the Ashkenazis from their home by commencing an eviction action in Kings County Civil Court (Index No. L&T
87732/2018) knowing that 1526 LLC had disputed the transfer of the deed to the Property; she filed papers purporting
to dissolve 1526 LLC and then moved to dismiss the State Court Action on the grounds that a dissolved LLC does not
have standing to sue; she transferred the Property to the Debtor even though her authority to transfer the Property back
to herself in the first place was already the subject of hotly contested litigation; the Debtor commenced its chapter 11
case in the SDNY even though the Property is located in Brooklyn and the underlying litigation is pending in Kings
County Supreme; and the Debtor has tried to rush through a section 363 sale of the Property [ECF No. 10] and a
motion to compel the Ashkenazis to provide access to their home to the Debtor and third-party strangers in order to
quickly sell the Property [ECF Nos. 9 & 13], knowing full well that the threshold issue of the ownership of the Property
has not been determined.

characteristics of "new debtor syndrome."  The case was filed as a litigation tactic to create another

forum to litigate a two-party dispute that was already being litigated in the pending State Court

Action for three years, and to contrive a basis for a section 363 sale of the Property before validity

of Bluma Lefkowitz's deed transfers has been judicially determined.

I.   **Standard On A Motion To Dismiss Under Section 1112(b)**

35.    Section 1112 of the Bankruptcy Code provides that a chapter 11 case may be

dismissed "for cause."  Subsection (b)(1) thereof provides as follows:

> Except as provided in paragraph (2) and subsection (c), on request of a party
> in interest, and after notice and a hearing, the court shall convert a case
> under this chapter to a case under chapter 7 or dismiss a case under this
> chapter, whichever is in the best interests of creditors and the estate, for
> cause unless the court determines that the appointment under section
> 1104(a) of a trustee or an examiner is in the best interests of creditors and
> the estate.

11 U.S.C. § 1112(b)(1).

36.    It is well-settled that "cause" for dismissal purposes includes a filing made in bad

faith.  *In re C-TC 9th Ave. P'ship v. Norton Movant (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304,

1310 (2d Cir. 1997); *see also Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal,

Inc.)*, 931 F.2d 222, 227-28 (2d Cir. 1991); *In re SGL Carbon Corp.*, 200 F.3d 154, 160-61 (3d

Cir. 1999) (compiling cases); *In re Schur Mgmt. Co.*, 323 B.R. 123, 126 (Bankr. S.D.N.Y. 2005).

"An important factor to consider in determining whether a Chapter 11 case was initiated in good

faith is whether the reorganization effort essentially involves a two-party dispute which can be

resolved in a non-bankruptcy forum."  *In re HBA East, Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y.

1988).

37.    Bad faith may also be established if the bankruptcy case was filed as a result of

"new debtor syndrome," a phenomenon characterized by the situation where an entity is newly

formed or revitalized to take property and then files a bankruptcy case.  *See, e.g., Laguna Assocs.*

*Ltd. P'ship v. Aetna Cas. & Surety Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 738 (6th Cir. 1994) ("[T]he Fifth Circuit has noted that the 'new debtor syndrome, in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.") (quotation and citation omitted); *In re Cinole, Inc.,* 339 B.R. 40, 45 fn.2 (Bankr. W.D.N.Y. 2006) (recognizing the "new debtor syndrome" as describing when a debtor is created or property is transferred solely for the purpose of filing a bankruptcy case).

38.    A prima facie case for dismissal may be demonstrated upon a showing of "new debtor syndrome," creating a rebuttable presumption of bad faith.  *In re Squires Motel, LLC*, 416 B.R. 45, 50 (Bankr. N.D.N.Y. 2009) ("[O]nce the creditor establishes that the transfer of the distressed property to the debtor was in close proximity to the filing of the case, a prima facie showing of bad faith has been shown, thus creating a rebuttable presumption of bad faith. The burden, thereafter, is on the debtor to establish good and sufficient reasons why the relief should not be granted.") (quoting *In re Yukon Enters., Inc.*, 39 B.R. at 921).

## II.    The Debtor Has All the Characteristics Of New Debtor Syndrome, Which Establishes A Prima Facie Case For A Bad Faith Filing

39.    This is a clear cut case of "new debtor syndrome" and the Debtor's chapter 11 case should be dismissed as having been filed in bad faith.  *See Squires Motel, LLC v. Gance (In re Squires Motel, LLC)*, 426 B.R. 29, 35 (N.D.N.Y. 2010) ("In particular, the court is persuaded that this is a clear-cut case of the 'new debtor syndrome,' as it involves, among other things, a dispute between two parties that was essentially resolved in state court and that would be best served by dismissal here.").

40.    Courts have identified the following badges of bad faith indicating "new debtor syndrome":

a.    the transfer of distressed real property into a newly created or dormant entity, usually a partnership or corporation;

b.    the transfer occurring within close proximity to the filing of the bankruptcy case;

c.    no consideration being paid for the transferred property other than stock in the debtor;

d.    the debtor having no assets other than the recently transferred, distressed property;

e.    the debtor having no or minimal unsecured debts; and

f.    the debtor having no means, other than the transferred property, to service the debt on the property.

*In re Squires Motel, LLC*, 416 B.R. 45, 50 (Bankr. N.D.N.Y. 2009) (citing *In re Yukon Enters., Inc.*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)).

41.    The Debtor in this case checks every box:  (a) the Property was transferred into the Debtor, which was formed in just the past few weeks; (b) the transfer of the Property occurred within one week of the Petition Date (and, egregiously, while litigation was pending concerning the ownership of the Property); (c) no consideration at all was paid for the transfer of the Property; (d) the Debtor has not listed any assets on its Schedules, other than the Property; (e) the Debtor has not listed any unsecured creditors on its Schedules; and (f) the Debtor has no means, other than the transferred Property, to service the debt on the Property.  The court's findings in *In re Éclair Bakery Ltd.*, 255 B.R. 121, 139-40 (Bankr. S.D.N.Y. 2000) would be suitable here:  "First, this Court finds that all or virtually all of the attributes of new debtor syndrome are indeed present. Second, it finds that certain of those indicia are extraordinarily obvious and blatant here … ."

42.    Here, the newly-created Debtor filed its bankruptcy case even though the holder of the Mortgage had not commenced any foreclosure action, so a foreclosure was not on the horizon let alone imminent.

43.     This Court has dismissed these types of "new debtor syndrome" cases as well.  *See*

*In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 165 fn.2 (Bank. S.D.N.Y. 2004) (Drain, J.)

("Moreover, the facts alleged by the Dismissal Motion described "new debtor syndrome, raising

the concern that the Debtors were using the Bankruptcy Code improperly.") (citation omitted).  In

that case, this Court dismissed cases as having been filed in bad faith based on the following set

of facts:  the properties were the Debtors' sole assets and produced no income; the debtors had no

ongoing business; the debtors had no creditors with the exception of the mortgagee and statutory

lienors, and no shareholders, directors officers or employees with the exception of one individual;

shortly before the bankruptcy filings the former owners of the properties assigned them to the

debtors, each of which had been formed for the purpose of receiving the properties, for no

consideration; the insider's interest in the chapter 11 cases was to delay the mortgagee's

foreclosure sale so he could market the properties himself, and pay himself a commission.  *Id.* at

166.

44.     Given the blatant case here of "new debtor syndrome," and the concerns set forth

below that 1526 LLC has raised that the Debtor is using the Bankruptcy Code improperly, there is

a rebuttable presumption that the Debtor's chapter 11 case was filed in bad faith.

**III.        The Debtor Filed This Case In Bad Faith As A Litigation Tactic**

45.     It is also equally clear that the Debtor filed its chapter 11 case in bad faith as a

litigation tactic for Bluma and Isaac Lefkowitz.  Following setbacks in the State Court Action, and

the eviction proceeding, Bluma Lefkowitz transferred the Property to the Debtor as a litigation

tactic to attempt to move the litigation to this Court and to try to sell the Property before the

ownership dispute can be decided.

46.     "[C]ourts have found that a debtor has filed its Chapter 11 petition in bad faith when

it had no reason to reorganize or rehabilitate and its filing of a Chapter 11 petition was merely an

attempt to avoid litigating issues in state court.  As one court has noted, Chapter 11 does not exist

for the purpose of allowing a debtor the option of litigating a dispute with a single party … in an

alternate forum, when the debtor has no other need of or use for the bankruptcy court." *Fraternal*

*Composite Servs., Inc. v. Karczewski (In re Fraternal Composite Servs., Inc.)*, 315 B.R. 253, 257

(N.D.N.Y. 2004) (quotation and citation omitted).  *See also In re UNED Assocs., LLC*, 2007 WL

1200822 (Bankr. S.D.N.Y. Apr. 20, 2007) ("It is also well accepted that a good faith bankruptcy

filing must be based on a reasonable degree of financial distress and cannot be used solely as a

litigation tactic.") (citing *In re SGL Carbon*, 200 F.3d 154, 162-63 (3rd Cir. 1999).

47.     The State Court Action is a two-party dispute involving only state law claims to

quiet title, and for fraud and conversion.  Merely because Bluma Lefkowitz was losing in the State

Court Action is not a legitimate basis for the Debtor to file a bankruptcy case and attempt to snatch

the State Court Action from the State Court, which has been presiding over the action for three

years.  The court in *In re The Bridge to Life, Inc.* dismissed a chapter 11 case as bad faith filing as

an improper litigation tactic for the reasons present here.  In that case, the court noted that "[t]here

can be no question that Bridge's First Chapter 11 case was not driven by a legitimate reorganization

purpose, but for strategic reasons to obtain a perceived litigation advantage in a two-party dispute.

… In addition, Bridge was otherwise losing badly on numerous fronts in the state court litigation

with Lucadamo."  *In re The Bridge to Life, Inc.*, 330 B.R. 351, 356 (Bankr. E.D.N.Y. 2005).

**IV.      The Debtor Cannot Demonstrate Any Unusual Circumstances To
          Preclude Dismissal, And The Debtor Has No Prospect Of Reorganizing**

48.     This case does not present any unusual circumstances that would preclude dismissal

upon the Court's finding that it was filed in bad faith.  There are virtually no creditors in this case

that would be affected by dismissal, and the single potential creditor in this case—the Mortgage

holder, who never had any dealings with the Debtor—would not be prejudiced by dismissal.  The

Debtor itself acknowledges that the value of the Property (the Ashkenazis' home, for which the Ashkenazis paid over $4 million to purchase) is well above the amount of the Mortgage debt.  The Debtor has no on-going business, no income, and no legitimate reorganization purpose.

49.     Nor can the Debtor demonstrate an ability to reorganize, because the Property does not belong to the Debtor.  Although the Debtor is forging ahead in its bankruptcy case as if it were the true owner of the Property, there is no basis for the Court to believe that the Debtor has a legitimate ownership interest in the Property.  The case law is clear that the issue of ownership of the Property must be adjudicated first (in this case, in the State Court) before the Court can consider a sale of the Property under section 363.  *See, e.g., In re Silver Beach, LLC*, 2009 WL 7809002, at *6-*7 (9th Cir. B.A.P. Nov. 3, 2009) ("Section 363(b) states the general rule that only 'property of the estate' may be sold pursuant to its authority. … A section 363(f) sale cannot be used to transform property of others into property of the estate. … Before the bankruptcy court may authorize a sale under authority of section 363(b)(1), the court must determine whether the estate actually has an interest in the property to be sold."); *In re Claywell*, 341 B.R. 396, 398 (Bankr. D. Conn. 2006) (denying entry of sale order where debtor's estate did not hold clear title to property being sold by trustee).

50.     Because the Debtor cannot sell what it does not own, there is no prospect of a reorganization, and the chapter 11 case should be dismissed so that the parties may proceed with an adjudication of the State Court Action without further delay.

**V.      Sanctions Against The Debtor, Bluma
       Lefkowitz And Isaac Lefkowitz Are Warranted**

51.     The foregoing describes an unmistakable pattern of abuse of the bankruptcy process by the Debtor, Bluma Lefkowitz and Isaac Lefkowitz.  Accordingly, 1526 LLC requests that the

Court impose sanctions against the Debtor, Bluma Lefkowitz and Isaac Lefkowitz for their roles in the bad faith commencement of the Debtor's chapter 11 case.

52.     Bankruptcy Rule 9011, 28 U.S.C. § 1927 and section 105 of the Bankruptcy Code each provide an independent basis to impose sanctions for wrongful conduct, including the bad faith filing of a bankruptcy petition.  *See In re Intercorp Int'l, Ltd.*, 309 B.R. 686, 692 (Bankr. S.D.N.Y. 2004).  "In determining whether to exercise discretion to impose Rule 9011 sanctions, the Court should be guided by the purposes of Rule 9011 sanctions, which is to 'deter repetition of such conduct or comparable conduct by other similarly situated.'"  *In re Parikh*, 508 B.R. 572, 584 (Bankr. E.D.N.Y. 2014) (citing Bankruptcy Rule 9011(c)(2)).  However, compensation also is a purpose of Bankruptcy Rule 9011. *See id*. (citing Bankruptcy Rule 9011(c)(1)(A)).

53.     Awarding sanctions under the "improper purpose" prong of Bankruptcy Rule 9011(b)(1) requires a finding of subjective bad faith, which may be inferred from a frivolous bankruptcy filing. *Id.* at 584-85.  In the Second Circuit, the leading case on sanctions for bad faith filings is *In re Cohoes Industrial Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991), which held that, in considering sanctions under Bankruptcy Rule 9011, "[a] petition may be deemed frivolous if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings."

54.     Courts in this circuit have applied the same standard to motions to dismiss for bad faith and sanctions based on bad faith.  *See In re Intercorp Int'l, Ltd.*, 309 B.R. at 693.  However, where a movant must establish "cause" for dismissal by a preponderance of the evidence under section 1112(b) of the Bankruptcy Code, the evidence of sanctionable conduct must be "clear" or "substantial." *Id.*  Lastly, the safe harbor provisions of Bankruptcy Rule 9011 do not apply in the

context of sanctions for a bad faith filing of a bankruptcy petition. Fed. R. Bankr. P. 9011(c)(1)(A); *see also Cohoes Indus. Terminal, Inc.*, 931 F.2d at 694, n.10.

55.    Bankruptcy courts also enjoy inherent power to sanction parties for improper conduct. It is well settled that bankruptcy courts, like all federal courts, have the inherent authority to impose sanctions on parties and professionals that appear before them. *See In re Khan*, 488 B.R. 515, 528 (Bankr. E.D.N.Y. 2013), *aff'd*, *Dahiya v. Kramer*, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd*, 593 Fed. Appx. 83 (2d Cir. 2015); *In re Plumeri*, 434 B.R. 315, 327-28 (S.D.N.Y. 2010); *Pereira v. Felzenberg*, 1997 WL 698186, at *5-*6 (S.D.N.Y. Nov. 7, 1997). "Invocation of the Court's inherent powers requires a finding of bad faith before sanctions may be imposed." *Pereira*, 1997 WL 698186, at *6 (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 47) (1990)); *see also*, *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) ("bad faith" means motivated by improper purposes such as harassment or delay). The inherent power of the court to sanction includes the ability to issue an injunction limiting litigation activities in order to protect its jurisdiction. *See In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984).

56.    The facts and circumstances set forth above supporting dismissal of the Debtor's chapter 11 case as a bad faith filing also support imposition of sanctions against the Debtor, Bluma Lefkowitz and Isaac Lefkowitz. Bluma Lefkowitz has, on multiple occasions, after having sold the Property to 1526 LLC, signed deeds transferring the Property without authorization to do so. And she has done this while the State Court Action was pending. 1526 LLC and the Ashkenazi family are exposed to the risk that, if this Court were simply to dismiss this case without imposing sanctions, then Bluma Lefkowitz, or the Debtor, or Isaac Lefkowitz may simply transfer the Property yet again to another entity and file another bankruptcy case in another court to further delay the adjudication of the State Court Action. For this reason, in addition to meaningful

monetary sanctions, 1526 LLC requests that the Court impose sanctions on the Debtor, Bluma

Lefkowitz and Isaac Lefkowitz prohibiting them from further transferring the Property or

commencing any bankruptcy case involving the Property unless and until the issue of ownership

of the Property has been fully adjudicated in the State Court Action.

## **CONCLUSION**

57.    For all the reasons set forth herein, 1526 LLC respectfully requests that this Court

dismiss the Debtor's chapter 11 case, assess sanctions against the Debtor, Bluma Lefkowitz and

Isaac Lefkowitz, and grant 1526 LLC such other relief as may be just and proper.

Dated: New York, New York
       July 16, 2021

RUBIN LLC

By:    */s/ Paul A. Rubin*
       Paul A. Rubin
       Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for 1526 52nd LLC*