# EXHIBIT L

FILED: KINGS COUNTY CLERK 03/08/2020 07:55 PM
NYSCEF DOC. NO. 955
21-22397-rdd   Doc 17-3   Filed 07/16/21   Entered 07/16/21 14:17:16   Exhibit
Exhibits L - M   Pg 2 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/08/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------x

1526 52ND LLC,

                *Plaintiff,*

- against -          Index No. 515379/2018

BLUMA LEFKOWITZ A/K/A BLUMA     AFFIRMATION OF DAVID
LEFKOWTIZ,                       ROTHSTEIN, ESQ.

               *Defendants.*

-----------------------------------------------------------x

      David Rothstein, an attorney admitted to the courts of the State of New York, under penalty of perjury, affirms:

      1.    This Affirmation is submitted in opposition to Defendant's motion to reargue.

      2.    Upon the request of Alexander Ashkenazi and that of Vetcare Health's president, Yitzchok a/k/a Jack Lefkowitz, I represented Mr. Ashkenazi with respect to a loan in the amount of $1,000,000.00, Mr. Ashkenazi made to Vetcare Health, (the "Loan"). I am familiar with the facts and circumstances set forth below, based upon my recollection and review of the documents in my file.

      3.    I am advised by Mr. Ashkenazi's current attorney in this matter, that Mr. Lefkowitz, in a sur-reply, has represented to this Court that the premises located at 1526 52nd Street, Brooklyn, New York (the "Premises") was collateral for the Loan.

      4.    I am also advised by Mr. Ashkenazi's attorney in this matter, that Mr. Lefkowitz has submitted to this Court a copy of a Loan and Stock and Warrant Purchase Agreement, dated March 12, 2014 which includes language providing for the Premises to be

FILED: KINGS COUNTY CLERK 03/08/2020 07:55 PM
NYSCEF DOC. NO. 455
21-22397-rdd   Doc 17-3   Filed 07/16/21   Entered 07/16/21 14:17:16   Exhibit
Exhibits L - M   Pg 3 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/08/2020

collateral for the Loan.

5. As the attorney involved in this Loan from its inception through funding, I drafted the various loan documents for the Loan, reviewed the Jewish/Yiddish agreement which was prepared by a Rabbi and was integrally involved in the negotiations between Messrs Ashkenazi and Lefkowitz throughout the transaction process.

6. To my knowledge, the Premises was never collateral for the Loan nor was it discussed at all, in any reference to the Loan.

7. To my knowledge, the Premises was never mentioned in any of the Loan documents that I prepared or reviewed.

8. The Loan documents were not finalized and executed until late 2014, the last draft in my file being on November 25th 2014 (copy attached)

9. I have no knowledge and am not aware of any other loans from Mr. Ashkenazi to Vetcare Health, other than the subject Loan.

Dated: Brooklyn, New York
March 4, 2019

David Rothstein

FILED: KINGS COUNTY CLERK 03/08/2020 07:55 PM
NYSCEF DOC. NO. 955
21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
Exhibits L - M    Pg 4 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/08/2020

# VETCARE HEALTH, INC.
# LOAN AND STOCK AND WARRANT PURCHASE AGREEMENT

This **Loan and Stock and Warrant Purchase Agreement** ("Agreement") is made as of this ___ day of September, 2014, by and among **VetCare Health, Inc.**, a New York corporation (the "Company"), **VetCare Health Plus, LLC** ("Purchaser") and **Jack Lefkowitz** ("Lefkowitz").

**In consideration** of the mutual promises and agreements set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. <u>Loan</u>.

    (a) Subject to the terms and conditions set forth herein, the Purchaser will make loans (collectively, the "Loan") to the Company, in such amounts as the Company may request on or before December 30, 2015 (the "Expiration Date"). The aggregate principal amount of the Loans shall not exceed One Million ($1,000,000) Dollars (the "Maximum Loan Amount").

    (b) The Loan shall be evidenced by a Convertible Promissory Note (the "Note") in the form attached hereto as Exhibit A.

    (c) The Company shall repay the Loan in full by the date set forth in the Note (the "Maturity Date"). The Company may prepay, at any time and from time to time, without penalty or premium, in cash, the whole or any portion of the Loan. The Note shall be convertible into shares of the Company's Series A Preferred Stock (as defined below) under the circumstances and upon the terms and conditions set forth in the Note.

    (d) In the event that the Note is converted into shares of the Company's Series A Preferred Stock, the parties shall take such steps as may be necessary to ensure that distributions, if any, shall be made in accordance with the following order, (i) First an amount equal to the principle amount of the Note converted into Series A Preferred Stock are first made to the Purchaser, (ii) Second, an amount equal to One Million Dollars shall be distributed to Lefkowitz and (iii) Third, thereafter distributions shall be made to the shareholders of the Company based on their respective equity interest, without reduction or adjustment for the priority distributions made to the Purchaser and Lefkowitz in accordance with the provisions in this sub-Section.

2. <u>Sale of Shares and Warrant</u>.

    (a) The Company shall, promptly following the execution of this Agreement, issue, sell and deliver to the Purchaser eleven (11) shares (the "Shares") of Series A Preferred Stock of the Company, containing the terms set out in the Amended and Restated Certificate of Incorporation annexed hereto as Exhibit B for a purchase price of One Dollar ($1.00) per share.

1

FILED: KINGS COUNTY CLERK 03/08/2020 07:55 PM
NYSCEF DOC. NO. 155
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/08/2020

21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
Exhibits L - M    Pg 5 of 20

(b) The Company shall issue, sell and deliver to the Purchaser a warrant (the "Warrant") in the form annexed hereto as Exhibit C.

(c) At the Company's request, the Purchaser may, but shall not be obligated to, provide additional funding to the Company pursuant to terms the parties hereto may mutually agree to, provided that for purposes of valuing any equity in the Company to be issued in connection therewith, the parties agree that the Company shall be valued at less than Ten Million ($10,000,000) Dollars.

3. **Representations and Warranties of the Company and Lefkowitz.** The Company and Lefkowitz represent and warrant to the Purchaser as follows:

(a) The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of New York. The Company has full corporate power and authority to own its property and conduct its business as now conducted, to enter into and perform this Agreement and the Note and, upon the filing of the Amended and Restated Certificate of Incorporation, will have the full corporate power and authority to issue, sell and deliver the Shares and the Warrant.

(b) The issuance, sale and delivery of the Shares and the Warrant have been duly authorized by all necessary corporate action on the part of the Company. The Shares, the shares issuable upon exercise of the Warrant (the "Warrant Shares") and the shares issuable upon conversion of the Note (the "Note Shares"), when issued, will be duly and validly issued, fully paid and nonassessable and free from any claims, liens or encumbrances.

(c) The execution, delivery and performance by the Company of this Agreement, the Note and the Warrant have been duly authorized by all necessary corporate action on the part of the Company. This Agreement, the Note and the Warrant constitute the legal, valid and binding obligations of the Company enforceable against the Company in accordance with their respective terms, subject to applicable bankruptcy, reorganization, insolvency, fraudulent conveyance and other similar laws generally affecting the rights and remedies of creditors and to the exercise of judicial discretion in accordance with general equitable principles.

(d) The execution and delivery of, and performance of the transactions contemplated by this Agreement, the Note and the Warrant, will not (i) violate any material provision of any law or regulation applicable to the Company, (ii) conflict with or result in any breach of any of the terms, conditions or provisions of, or constitute a default under, any material indenture, lease, mortgage, agreement or other instrument to which the Company is a party or by which it or any of its properties is bound, or any decree, judgment or order known to the Company which is applicable to the Company or its properties, or (iii) result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the assets or properties of the Company.

2

FILED: KINGS COUNTY CLERK 03/08/2020 07:55 PM
NYSCEF DOC. NO. 955
21-22397-rdd   Doc 17-3   Filed 07/16/21   Entered 07/16/21 14:17:16   Exhibit
Exhibits L - M   Pg 6 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/08/2020

(e)   No consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any governmental authority is required on the part of the Company in connection with the execution, delivery and performance of this Agreement, the Note and the Warrant or the offer, issuance and sale of the Shares, the Warrant Shares and the Note Shares, except such filings as shall have been made prior to and shall be effective on and as of the date hereof or which this Agreement explicitly obligates the Company to take promptly following the execution of this Agreement.

(f)   As of the date of this Agreement the authorized and issued capital stock of the Company consists solely of common stock. No other shares of capital stock have been authorized or issued. There are no accrued but unpaid dividends of any kind or nature on the Company's capital stock.

4.   **Agreements and Covenants**. Each of the Company and Lefkowitz covenant and agree as follows:

(a)   To cause the Amended and Restated Certificate of Incorporation to be filed with the Secretary of State of the State of New York promptly following the execution of this Agreement.

(b)   So long as the Note is outstanding, (i) the Company will not declare any dividends on its capital stock, repurchase or redeem any of its capital stock or otherwise make any distributions to its stockholders, and (ii) any additional capital raised by the Company shall be used first to repay amounts outstanding under the Note.

(c)   So long as any of the Shares, the Note, the Warrant, the Warrant Shares or the Note Shares are outstanding the Company will not without notice (i) issue any equity interests in the Company other than common stock, (ii) issue any options, warrants or other instruments convertible into any equity interests of the Company other than common stock or (iii) take any action, directly or indirectly or permit any action to be taken, solely or primarily for the purpose of increasing the value of any class of stock of the Company or any of its subsidiaries if the effect of such action is reasonably likely to reduce the value, security, rights or preferences of the Note or the Shares, Note Shares or Warrant Shares.

(d)   So long as (i) any of the Shares, the Note, the Warrant, the Warrant Shares or the Note Shares are outstanding and (ii) the Company has not issued to one or more venture capital investors new equity representing twenty five percent (25%) or more of the Company's capital stock, on a fully diluted basis, in an arms' length transaction, none of the following actions will be taken without the prior written consent of the Purchaser, which consent may be withheld for any or no reason:

i.   Any amendment, alteration or repeal of any of the provisions of the Certificate of Incorporation, or the By-laws of the Company or any subsidiary of the Company;

3

FILED: KINGS COUNTY CLERK 03/08/2020 07:55 PM
NYSCEF DOC. NO. 955
21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
Exhibits L - M    Pg 7 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/08/2020

ii. The authorization or creation by the Company or any subsidiary of the Company of, or the increase in the number of authorized shares of, any stock of any class, or any security convertible into stock of any class, or the authorization or creation of any new class of preferred stock (or any action which would result in another series of preferred stock);

iii. The liquidation, dissolution or winding-up of the Company or any merger or consolidation of the Company or any of its subsidiaries with or into another entity or the sale, conveyance or other disposition of all, or substantially all, the assets, property or business of the Company;

iv. The reorganization, recapitalization, sale, conveyance, or other disposition of or encumbrance of all or substantially all of the property or business of the Company or any of its subsidiaries or the merger into or consolidation with any other corporation or effect any transaction or series of related transactions in which, in any case, more than ten (10%) percent of the voting power of the Company is disposed of;

v. The entering into by the Company or any of its subsidiaries into an indebtedness for borrowed money, except in the ordinary course of business, but in any case not for amounts greater than Ten Thousand ($10,000) Dollars;

vi. The granting or making by the Company or any of its subsidiaries of any mortgage or pledge, or the assumption or suffering to exist on, or the imposition on, any of its material properties or assets, any lien, charge, defect in title, or encumbrance of any kind, except liens for taxes not currently due;

vii. The loan or advance of money, credit (other than by the creation of accounts receivable in the ordinary course of business) or property by the Company or any of its subsidiaries;

viii. The hiring of any officer of the Company;

ix. The making of or commitment to make, by the Company or any of its subsidiaries, any capital expenditures, other than as specifically set forth in the budget reviewed by the Purchaser;

x. The approval of any transaction with an affiliate or related person of Lefkowitz for an amount greater than Ten Thousand ($10,000) Dollars;

xi. Any increase in the compensation paid to Lefkowitz, any officer of the Company;

xii. The entering into by the Company or any of its subsidiaries of any material agreement or amendment or termination of any existing material agreement except in the ordinary course of business.

(e) So long as any of the Shares, the Note, the Warrant, the Warrant Shares or the Note Shares are outstanding the Purchaser shall have the right and full access, during normal business hours, to inspect and make copies of the Company's books and records.

(f) In the event Purchaser shall invest or lend One Million Dollars ($1,000,000) or more in the Company other than the amounts to be advanced pursuant to the Note, the Purchaser shall be

4

permitted to designate one person to serve on the Company's board of directors. Such appointment shall be in addition to the right of the holders of the Series A Preferred Stock to elect one director pursuant to the Amended and Restated Certificate of Incorporation of the Company. The Company shall not increase the size of the board of directors to more than five (5) directors without the Purchaser's prior written approval.

(g) Lefkowitz shall vote all of his interests in the Company and shall take all other necessary or desirable actions within his control, and the Company shall take all necessary and desirable actions, to effectuate the terms of this Agreement.

5. **Right of First Refusal**.

(a) In the event the Company seeks to raise capital by issuing debt or equity other than in an arms' length transaction with an institutional venture capital investor, Purchaser or Purchaser's designee shall have the right to purchase additional shares of Common Stock for an amount equal to or up to the Maximum Loan Amount of the Note plus Two Million Dollars ($2,000,000). The purchase price of the Common Stock shall be determined so that following such transaction the Purchaser will own Common Stock that, together with the Series A Preferred Stock acquired by the Purchaser pursuant to this Agreement, represents: i. 35.33% of the voting, dividend and liquidation preferences of all capital stock in the Company (pro-rated if the Purchaser elects to exercise this right but for less than the full purchase price permitted hereby) if the Warrant provided for in this Agreement has been exercised upon by the Purchaser; or ii. 33.33% of the voting, dividend and liquidation preferences of all capital stock in the Company (pro-rated if the Purchaser elects to exercise this right but for less than the full purchase price permitted hereby) if the Warrant provided for in this Agreement has not been exercised upon by the Purchaser (the "Common Equity Right of First Refusal"). The Common Equity Right of First Refusal shall be affective only through the first two capital raises or a cumulative total capital raise of Five Million ($5,000,000) Dollars, whichever occurs last. The Company shall provide no less than thirty (30) days' prior written notice (a "Sale Notice") to Purchaser of any such proposed issuance. The Sale Notice shall identify (i) the Company's bona fide intention to issue securities, (ii) the name and address of each proposed purchaser, and (iii) the number and amount of securities to be offered. The Purchaser may exercise this Common Equity Right of First Refusal, in whole or in part, by providing written notice to the Company of such election within 20 days of receipt of the Sale Notice. If the Purchaser exercises his right of first refusal hereunder, the Purchaser may pay for some or all of its purchase by cancelling an equivalent amount of the amount then due pursuant to the Note.

(b) In the event the Company seeks to raise capital by issuing debt or equity other than in an arms' length transaction with an institutional venture capital investor, Purchaser or Purchaser's designee(s) shall have a right of first refusal to participate in such transaction at the purchase price and on the terms as the Company proposes to issue such interests to parties other than the Purchaser (the "General Right of First Refusal"). The Company shall provide a Sale Notice

5

FILED: KINGS COUNTY CLERK 03/08/2020 07:55 PM
NYSCEF DOC. NO. 955
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/08/2020

21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
Exhibits L - M    Pg 9 of 20

no less than thirty (30) days' prior to any such proposed issuance. The Purchaser may exercise this General Right of First Refusal, in whole or in part, by providing written notice to the Company of such election within 20 days of receipt of the Sale Notice. If the Purchaser exercises his right of first refusal hereunder, the Purchaser may pay for some or all of its purchase by cancelling an equivalent amount of the amount then due pursuant to the Note.

(c)    If the Purchaser fails to exercise any of the rights of first refusal set out in this Section 5, the Company shall be permitted to raise capital on terms no less favorable to the Company than as set out in the Sale Notice until 180 days following the date of such Sale Notice.

6.    **Miscellaneous.** This Agreement, the Warrant and the Note constitute the entire agreement among the parties with respect to the subject matter hereof, provided that the parties acknowledge and agree that the Memorandum of Understanding executed between the Company and the Purchaser shall survive to the extent it relates to matters other than the specific transactions contemplated hereby. This Agreement may not be modified or amended except by an instrument in writing signed by all the parties hereto. This Agreement may be executed in two or more counterparts and via facsimile, email or other electronic means, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its provisions regarding conflicts of law.

**IN WITNESS WHEREOF**, the undersigned have executed this Loan and Stock and Warrant Purchase Agreement as of the date first set out above.

| VETCARE HEALTH, INC. | VETCARE HEALTH PLUS, LLC: |
|---|---|
| By: _____ | _____ |
| **Yitzchok Lefkowitz**, its President & Secretary | **Sender Ashkanazi**, its Managing Member |

_____
**Yitzchok Lefkowitz**, Individually

**STATE OF NEW YORK**
**COUNTY OF KINGS**

On the    day of November, in the year 2014, before me, the undersigned, **Yitzchok Lefkowitz**, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person or entity upon behalf of which the individual acted, executed the instrument.

Sworn to before me this    , day of November, 2014

6

FILED: KINGS COUNTY CLERK 03/08/2020 07:55 PM
NYSCEF DOC. NO. 955
21-22397-rdd   Doc 17-3   Filed 07/16/21   Entered 07/16/21 14:17:16   Exhibit
Exhibits L - M   Pg 10 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/08/2020

Notary Public

7

# EXHIBIT M

FILED: KINGS COUNTY CLERK 03/31/2021 12:05 PM
NYSCEF DOC. NO. 168
21-22397-rdd   Doc 17-3   Filed 07/16/21   Entered 07/16/21 14:17:16   Exhibit
              Exhibits L - M   Pg 12 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/31/2021

At an IAS Term, Part 88 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 23rd day of March, 2021.

P R E S E N T:

HON. DAWN JIMENEZ-SALTA,
                Justice.
----------------------------------------X
1526 52ND LLC,

                Plaintiff,

   - against -

BLUMA LEFKOWITZ A/K/A BLUMA LEFKOWTIZ,

                Defendant.
----------------------------------------X

Index No. 515379/18

DECISION AND ORDER
MOT. SEQ. 5

| The following e-filed papers read herein: | NYSCEF Doc. No.[1] |
|---|---|
| Notice of Motion, Affidavit + Affirmation and Annexed Exhibits | 113-131 |
| Opposing Affirmations and Annexed Exhibits | 134-135, 161 |
| Reply | 162-167 |

Upon the foregoing papers in this quiet title and declaratory relief action to strike a deed from plaintiff, 1526 52nd LLC (plaintiff or 1526), now dissolved, to defendant Bluma Lefkowitz (defendant), defendant moves (in motion sequence [mot. seq.] five) for an order, pursuant to CPLR 3212, granting her summary judgment dismissing the complaint.

*Factual Background and Procedural History*

Nonparty Rivka Ashkenazi (Ms. Ashkenazi), the sole purported member of 1526, has derivatively acted on its behalf and commenced the present action through the filing of a summons with notice and then a complaint herein. The action presents three causes of

---

[1] New York State Courts Electronic Filing Document Numbers

FILED: KINGS COUNTY CLERK 03/31/2021 12:05 PM
NYSCEF DOC. NO.: 168
21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
Exhibits L - M    Pg 13 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/31/2021

action: (1) to quiet title to the premises at 1526 52nd Street in Brooklyn by invalidating the alleged fraudulent deed transfer from 1526 to defendant, individually; (2) for fraud and (3) for conversion. Defendant answered the complaint, denied the material allegations therein and asserted several affirmative defenses, including lack of standing and lack of capacity. Defendant also asserted several counterclaims which are not the subject of this motion.

This case most fundamentally concerns the nature of transactions involving the premises. It arises from disputes between, collectively, defendant and her husband, Jack (Yitzchok) Lefkowitz (Mr. Lefkowitz) and Ms. Ashkenazi and her husband, Sender (Alexander) Ashkenazi (Mr. Ashkenazi). These disputes concern (1) who owns the two-family premises at 1526 52nd Street in Brooklyn (premises) with each couple claiming an interest in the premises; (2) who is the sole member of 1526; (3) whether the premises were sold to 1526; and (4) were the premises used as collateral for a $1,000,000 loan from Mr. Ashkenazi to Vetcare Health, Inc. (Vetcare),[2] a company in which Mr. Lefkowitz was the managing member. Defendant acquired title to the premises on June 28, 2001 through a bargain and sale deed with covenant against grantor's acts, and, on September 10, 2006, granted, without consideration, a joint interest to her relative, Tova Greenbaum (Ms. Greenbaum).

Articles of Organization were filed in behalf of 1526, pursuant to Limited Liability Company Law § 203, with the New York State Department of State on July 9, 2014. Defendant and Ms. Greenbaum subsequently deeded the subject premises to 1526 on or about August 1, 2014.

---

[2] Vetcare Health, Inc. is a domestic corporation, first registered in 2013, engaged in providing health insurance for domestic animals.

FILED: KINGS COUNTY CLERK 03/31/2021 12:05 PM
NYSCEF DOC. NO. 168
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/31/2021

21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
               Exhibits L - M    Pg 14 of 20

Thereafter, defendant utilized 1526 to convey a deed to the premises to herself, individually on June 26, 2018.[3] Ms. Ashkenazi, upon discovering this situation, acted derivatively on behalf of 1526 and subsequently commenced the present action on July 27, 2018 by filing a summons and then a complaint on July 31, 2018. That same day, July 31, 2018, defendant acted and 1526 was dissolved. Two weeks later, on August 14, 2018, a deed that defendant purportedly executed was recorded on forms that her counsel believes were apparently completed and notarized by Norman Seidenfeld, Esq., who also filed 1526's Articles of Organization and served as Ms. Ashkanazi's attorney on the contested purchase of the premises.

### *Supporting Arguments*

Defendant argues that Ms. Ashkenazi has failed to establish that she is a member of 1526 and can proceed in its name, that 1526, as a limited liability company, itself lacks standing to proceed, that 1526 cannot quiet title as it has no rights to the premises, that the deed delivered to Mr. Ashkenazi should be treated as a mortgage; that 1526 and Ms. Ashkenazi have failed to demonstrate any fraud on defendant's part; and that the Ashkenazis have no property rights capable of conversion. Defendant claims that she and Ms. Greenbaum "executed a contract of sale and rider in blank as well as a deed in blank and related documents" as to the premises on or about April 1, 2014 in furtherance of a pledge that the premises would serve as collateral for the aforementioned loan from Mr. Ashkenazi to Mr. Lefkowitz's company.[4] Defendant concurrently claims that 1526 was

---

[3] An August 2018 correction deed rectified a typographical error (*see* NYSCEF Doc No. 33).

[4] NYSCEF Doc No. 115, Ms. Lefkowitz's affirmation at 3-4, ¶¶ 14-15, annexed to defendant's moving papers.

3

FILED: KINGS COUNTY CLERK 03/31/2021 12:05 PM
NYSCEF DOC. NO. 168
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/31/2021

21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
Exhibits L - M    Pg 15 of 20

formed for her benefit, and that she was 1526's initial and sole member. Defendant's counsel alleges that defendant and Ms. Greenbaum had voted in or about July 2014 to dissolve 1526 and liquidate its sole asset by transferring title to the premises to defendant.

Defendant's counsel acknowledges that the loan agreement directly and expressly required Mr. Lefkowitz to "arrange for the deed owners of the property 1526 52nd Street, Brooklyn, New York to sign a blank purchase agreement, blank deed and necessary closing documents needed to collateralize . . . the note."[5] This deed was purportedly delivered as additional security for the loan made to Vetcare, and the supporting affirmations of defendant and Mr. Lefkowitz allege that, upon agreement with Mr. Ashkenazi, none of the documents were to be recorded except in the event of default, which did not occur. Both defendant and Mr. Lefkowitz further argue that even if a default had occurred, there was no right for Mr. Ashkenazi to record the deed, as it was given solely as security, and thus, the document should be considered as a mortgage. They each maintain that the loan to Vetcare was fully satisfied.

Furthermore, defendant affirms that

> "I never signed anything before [Norman] Seidenfeld [Ms. Ashkenzai's attorney for the purchase of the premises]. I specifically know that I did not sign anything on July 28, 2018 or on August 1, 2014, the date that appears on the deed, as those Dates correspond to dates in the first nine days of the Hebrew month of Av[*] when my religious beliefs mandate that I not transact new business."
>
> [*]"Jews believe that no unnecessary contracts, agreements or Court proceedings are to be engaged in during these nine days."[6]

---

[5] NYSCEF Doc Nos. 114, affirmation of defendant's counsel at 11, ¶ 40 and NYSCEF Doc Nos. 64 and 129, Vet Care Health, Inc. Loan and Stock and Warrant Purchase Agreement at 5, § 4 [h], annexed to defendant's moving papers).

[6] NYSCEF Doc No. 115, defendant's affirmation at 4, ¶ 18, annexed to defendant's moving papers.

4

FILED: KINGS COUNTY CLERK 03/31/2021 12:05 PM
NYSCEF DOC. NO. 168
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/31/2021

21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
Exhibits L - M    Pg 16 of 20

Defendant maintains that the deed was executed only as security for the loan which was fully paid and that all collateral documents should have been surrendered or destroyed on or about April 2015. She further contends that "the contract and forms I provided were completed and modified [b]y the Ashkenazi[]s or persons acting on their behalf to indicate a transfer [of] the property to Ashkenazi individually."[7] Defendant claims that there was never any intention to transfer ownership of the property as evinced by her name remaining on all taxes and utilities. Mr. Lefkowitz, in his supporting affirmation, contends that the contract and forms were altered to indicate that a right to title to the property was transferred to Ms. Ashkenazi individually, which is contrary to the language in the contract that he, Vetcare and Mr. Ashkenazi executed.

*Opposing Arguments*

Procedurally, 1526 notes that defendant's failure to include the pleadings provides a basis to deny the motion. Ms. Ashkenazi's affirmation opposing the motion alleges that she is the sole member of 1526 and stresses that the action in question involves a simple purchase of residential property. She recounts that on April 1, 2014 she entered into a contract of sale for the premises with defendant and her tenant in common, Ms. Greenbaum. Ms. Ashkenazi and Mr. Seidenfeld, her counsel for the purchase of the premises, collectively assert that the signed documents were simply for purchasing the residential premises, not for securing an unrelated loan. Ms. Ashkenazi asserts that 1526 was formed for her to purchase the premises. She highlights that this contract was initialed

---

[7] *id.* at 2, ¶ 9.

FILED: KINGS COUNTY CLERK 03/31/2021 12:05 PM
NYSCEF DOC. NO. 168
21-22397-rdd   Doc 17-3   Filed 07/16/21   Entered 07/16/21 14:17:16   Exhibit
Exhibits L - M   Pg 17 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/31/2021

and signed by defendant and contained various riders relating to both terms of the closing upon sale of the premises and assumption of a mortgage.

Ms. Ashkenazi also states that a $560,000 down payment was released per the contract of sale by Mr. Seidenfeld. Furthermore, she submits that upon the closing, defendant was paid $4,025,000.00, part of which includes assuming an existing $1,469,477.15 mortgage. Mr. Ashkenazi, in his opposing affirmation, also asserts that the purchase of the premises, which closed on August 1, 2014, was with full payment of $4,025,000.00 (which includes assumption of the mortgage) and that a separate and unrelated one million dollar loan was made to Vetcare.

Ms. Ashkenazi maintains that the assumed mortgage is the basis of the dispute herein, that defendant, approximately three years after the closing, requested that the mortgage be refinanced so that it would no longer be under defendant's name, and that shortly after that request, defendant deeded the premises back to herself, purporting to be a member of 1526. Ms. Ashkenazi also explains that, after discovering this allegedly improper transfer, 1526 filed this action seeking to quiet title as well as damages for fraud and conversion of the premises. She claims that she is ready to pay off the entire mortgage in defendant's name but was prevented by 1526's transfer of the deed to defendant.

Ms. Ashkenazi, in response to defendant's claim that 1526 does not have standing to bring this action because it is a dissolved company, references defendant's request to the Department of State to dissolve 1526, and states that she is in the process of having 1526 reinstated by the Department of State. In addition, counsel for 1526 separately notes that, as Ms. Lefkowitz's counsel acknowledges, a dissolved corporation may sue.

FILED: KINGS COUNTY CLERK 03/31/2021 12:05 PM
NYSCEF DOC. NO. 168
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/31/2021

21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
Exhibits L - M    Pg 18 of 20

*Discussion*

Summary judgment is a drastic remedy that deprives a litigant of his or her day in court, and thus, should only be employed when there is no doubt as to the absence of triable issues of material fact (*Andre v Pomeroy*, 35 NY2d 361, 364 [1974]; *Kolivas v Kirchoff*, 14 AD3d 493, 493 [2d Dept 2005]). The party moving for summary judgment has the initial burden of making a prima facie showing of entitlement to judgment as a matter of law by demonstrating, through admissible evidence, the absence of any material factual issues (*see Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993]; *Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *see also Manicone v City of New York*, 75 AD3d 535, 537 [2d Dept 2010]). "Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*Smalls v AJI Indus., Inc.*, 10 NY3d 733, 735 [2008], *rearg denied* 10 NY3d 885 [2008] quoting *Alvarez*, 68 NY2d at 324 [italics removed]).

Once that prima facie showing has been made, the burden then shifts to the opponent to come forward with some proof in admissible form that genuine issues of material fact exist, which preclude granting summary judgment (*see Zuckerman v City of New York*, 49 NY2d 557 [1980]; *see also Garnham & Han Real Estate Brokers v Oppenheimer*, 148 AD2d 493, 494 [2d Dept 1989]). Summary judgment "should not be granted where there is any doubt as to the existence of such issues or where the issue is 'arguable'; issue-finding, rather than issue-determination, is the key to the procedure" (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957], *rearg denied* 3 NY2d 941 [1957]) [internal citations omitted]; *see also Mayland v. Craighead*, 144 AD2d 344, 346 [2d Dept 1988]). "The court's function on a motion for summary judgment is 'to determine whether

FILED: KINGS COUNTY CLERK 03/31/2021 12:05 PM
NYSCEF DOC. NO. 168
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/31/2021
21-22397-rdd    Doc 17-3    Filed 07/16/21    Entered 07/16/21 14:17:16    Exhibit
Exhibits L - M    Pg 19 of 20

material factual issues exist, not resolve such issues'" (*Ruiz v Griffin*, 71 AD3d 1112, 1115 [2d Dept 2010] quoting *Lopez v Beltre*, 59 AD3d 683, 685 [2d Dept 2009]). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 315 [2004], quoting *Anderson v Liberty Lobby, Inc.*, 477 US 242, 255 [1986]; see also *Scott v Long Is. Power Auth.*, 294 AD2d 348, 348 [2d Dept 2002]).

CPLR 3212 (b) provides that "a motion for summary judgment shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions." The Second Department has repeatedly held that failure, as here, to include a set of the pleadings requires denying a summary judgment motion (*see Rivera v City of New York*, 173 AD3d 790, 791 [2d Dept 2019]; *Deer Park Wider v Heller*, 24 AD3d 433, 434 [2d Dept 2005]); *Assoc. v Robbins Store*, 243 AD2d 443 [2d Dept 1997]).

Defendant and Ms. Ashkenazi both acknowledge that 1526 is a limited liability company, but each one claims to be 1526's sole member and to personally own the premises herein. Mr. Lefkowitz handled all negotiations with Mr. Ashkenazi, and it appears that neither defendant nor Ms. Ashkenazi personally conducted any transactions. Thoroughly reviewing the exhibits presented by both parties, specifically emails and handwritten notes indicating accountings exchanged between Mr. Lefkowitz and Mr. Ashkenazi, shows the transactional nature of these negotiations as a sale/purchase of the premises. However, numerous material factual issues precluding summary judgment exist regarding the alleged purchase as well as concerning the loan to Vetcare, such as who are 1526's actual members and who owns the premises.

FILED: KINGS COUNTY CLERK 03/31/2021 12:05 PM
NYSCEF DOC. NO. 168
21-22397-rdd  Doc 17-3  Filed 07/16/21  Entered 07/16/21 14:17:16  Exhibit
Exhibits L - M  Pg 20 of 20
INDEX NO. 515379/2018
RECEIVED NYSCEF: 03/31/2021

These issues of fact, separate and apart from the failure to attach the pleadings, necessitate denial of the instant summary judgment motion. Accordingly, it is

**ORDERED** that defendant's summary judgment motion (mot. seq. five) is denied.

The foregoing constitutes the decision and order of the court.

ENTER,

_Dawn Jimenez-Salta_

Dawn Jimenez-Salta, J. S. C.

**Hon. Dawn Jimenez-Salta**
**Justice of the Supreme Court**