21-22397-rdd    Doc 24-1    Filed 07/30/21    Entered 07/30/21 12:18:05    Exhibit A
Article Loan Documents    Pg 1 of 9
FILED: KINGS COUNTY CLERK 12/19/2018 09:43 AM
INDEX NO. 515379/2018
NYSCEF DOC. NO. 64
RECEIVED NYSCEF: 12/19/2018

# VETCARE HEALTH, INC.
# LOAN AND STOCK AND WARRANT PURCHASE AGREEMENT

This **Loan and Stock and Warrant Purchase Agreement** ("Agreement") is made as of this 12th day of March, 2014, by and among **VetCare Health, Inc.**, a New York corporation (the "Company"), **Sender Ashkenazi** ("Purchaser") and **Yitzchok Lefkowitz** ("Lefkowitz").

**In consideration** of the mutual promises and agreements set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.  **Loan.**

    (a) Subject to the terms and conditions set forth herein, the Purchaser will make loans (collectively, the "Loan") to the Company, in such amounts as the Company may request on or before April 11, 2014 (the "Expiration Date"). The aggregate principal amount of the Loans shall not exceed One Million ($1,000,000) Dollars (the "Maximum Loan Amount").

    (b) The Loan shall be evidenced by a Convertible Promissory Note (the "Note") in the form attached hereto as Exhibit A.

    (c) The Company shall repay the Loan in full by the date set forth in the Note (the "Maturity Date"). The Company may prepay, at any time and from time to time, without penalty or premium, in cash, the whole or any portion of the Loan. The Note shall be convertible into shares of the Company's Series A Preferred Stock (as defined below) under the circumstances and upon the terms and conditions set forth in the Note.

    (d) In the event that the Note is converted into shares of the Company's Series A Preferred Stock, the parties shall take such steps as may be necessary to ensure that distributions, if any, shall be made in accordance with the following order, (i) First an amount equal to the principle amount of the Note converted into Series A Preferred Stock are first made to the Purchaser, (ii) Second, an amount equal to One Million Dollars shall be distributed to Lefkowitz and (iii) Third, thereafter distributions shall be made to the shareholders of the Company based on their respective equity interest, without reduction or adjustment for the priority distributions made to the Purchaser and Lefkowitz in accordance with the provisions in this sub-Section.

2.  **Sale of Shares and Warrant.**

    (a) The Company shall, promptly following the execution of this Agreement, issue, sell and deliver to the Purchaser eleven (11) shares (the "Shares") of Series A Preferred Stock of the Company, containing the terms set out in the Amended and Restated Certificate of Incorporation annexed hereto as Exhibit B for a purchase price of One Dollar ($1.00) per share.

1

FILED: KINGS COUNTY CLERK 12/19/2018 09:43 AM
NYSCEF DOC. NO. 64

21-22397-rdd   Doc 24-1   Filed 07/30/21   Entered 07/30/21 12:18:05   Exhibit A
                    - Velcare Loan Documents   Pg 2 of 9

INDEX NO. 515379/2018
RECEIVED NYSCEF: 12/19/2018

(b) The Company shall issue, sell and deliver to the Purchaser a warrant (the "Warrant") in the form annexed hereto as Exhibit C.

(c) At the Company's request, the Purchaser may, but shall not be obligated to, provide additional funding to the Company pursuant to terms the parties hereto may mutually agree to, provided that for purposes of valuing any equity in the Company to be issued in connection therewith, the parties agree that the Company shall be valued at less than Ten Million ($10,000,000) Dollars.

3. **Representations and Warranties of the Company and Lefkowitz.** The Company and Lefkowitz represent and warrant to the Purchaser as follows:

(a) The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of New York. The Company has full corporate power and authority to own its property and conduct its business as now conducted, to enter into and perform this Agreement and the Note and, upon the filing of the Amended and Restated Certificate of Incorporation, will have the full corporate power and authority to issue, sell and deliver the Shares and the Warrant.

(b) The issuance, sale and delivery of the Shares and the Warrant have been duly authorized by all necessary corporate action on the part of the Company. The Shares, the shares issuable upon exercise of the Warrant (the "Warrant Shares") and the shares issuable upon conversion of the Note (the "Note Shares"), when issued, will be duly and validly issued, fully paid and nonassessable and free from any claims, liens or encumbrances.

(c) The execution, delivery and performance by the Company of this Agreement, the Note and the Warrant have been duly authorized by all necessary corporate action on the part of the Company. This Agreement, the Note and the Warrant constitute the legal, valid and binding obligations of the Company enforceable against the Company in accordance with their respective terms, subject to applicable bankruptcy, reorganization, insolvency, fraudulent conveyance and other similar laws generally affecting the rights and remedies of creditors and to the exercise of judicial discretion in accordance with general equitable principles.

(d) The execution and delivery of, and performance of the transactions contemplated by this Agreement, the Note and the Warrant, will not (i) violate any material provision of any law or regulation applicable to the Company, (ii) conflict with or result in any breach of any of the terms, conditions or provisions of, or constitute a default under, any material indenture, lease, mortgage, agreement or other instrument to which the Company is a party or by which it or any of its properties is bound, or any decree, judgment or order known to the Company which is applicable to the Company or its properties, or (iii) result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the assets or properties of the Company.

(e)    No consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any governmental authority is required on the part of the Company in connection with the execution, delivery and performance of this Agreement, the Note and the Warrant or the offer, issuance and sale of the Shares, the Warrant Shares and the Note Shares, except such filings as shall have been made prior to and shall be effective on and as of the date hereof or which this Agreement explicitly obligates the Company to take promptly following the execution of this Agreement.

(f)    As of the date of this Agreement the authorized and issued capital stock of the Company consists solely of common stock. No other shares of capital stock have been authorized or issued. There are no accrued but unpaid dividends of any kind or nature on the Company's capital stock.

4.    **Agreements and Covenants**. Each of the Company and Lefkowitz covenant and agree as follows:

(a)    To cause the Amended and Restated Certificate of Incorporation to be filed with the Secretary of State of the State of New York promptly following the execution of this Agreement.

(b)    So long as the Note is outstanding, (i) the Company will not declare any dividends on its capital stock, repurchase or redeem any of its capital stock or otherwise make any distributions to its stockholders, and (ii) any additional capital raised by the Company shall be used first to repay amounts outstanding under the Note.

(c)    So long as any of the Shares, the Note, the Warrant, the Warrant Shares or the Note Shares are outstanding the Company will not without notice (i) issue any equity interests in the Company other than common stock, (ii) issue any options, warrants or other instruments convertible into any equity interests of the Company other than common stock or (iii) take any action, directly or indirectly or permit any action to be taken, solely or primarily for the purpose of increasing the value of any class of stock of the Company or any of its subsidiaries if the effect of such action is reasonably likely to reduce the value, security, rights or preferences of the Note or the Shares, Note Shares or Warrant Shares.

(d)    So long as (i) any of the Shares, the Note, the Warrant, the Warrant Shares or the Note Shares are outstanding and (ii) the Company has not issued to one or more venture capital investors new equity representing twenty five percent (25%) or more of the Company's capital stock, on a fully diluted basis, in an arms' length transaction, none of the following actions will be taken without the prior written consent of the Purchaser, which consent may be withheld for any or no reason:

    i.    Any amendment, alteration or repeal of any of the provisions of the Certificate of Incorporation, or the By-laws of the Company or any subsidiary of the Company;

3

21-22397-rdd    Doc 24-1    Filed 07/30/21    Entered 07/30/21 12:18:05    Exhibit A
Certificate of Incorporation    Pg 4 of 9
FILED: KINGS COUNTY CLERK 12/19/2018 09:43 AM
NYSCEF DOC. NO. 64
INDEX NO. 515379/2018
RECEIVED NYSCEF: 12/19/2018

    ii.    The authorization or creation by the Company or any subsidiary of the Company of, or the increase in the number of authorized shares of, any stock of any class, or any security convertible into stock of any class, or the authorization or creation of any new class of preferred stock (or any action which would result in another series of preferred stock);

    iii.    The liquidation, dissolution or winding-up of the Company or any merger or consolidation of the Company or any of its subsidiaries with or into another entity or the sale, conveyance or other disposition of all, or substantially all, the assets, property or business of the Company;

    iv.    The reorganization, recapitalization, sale, conveyance, or other disposition of or encumbrance of all or substantially all of the property or business of the Company or any of its subsidiaries or the merger into or consolidation with any other corporation or effect any transaction or series of related transactions in which, in any case, more than ten (10%) percent of the voting power of the Company is disposed of;

    v.    The entering into by the Company or any of its subsidiaries into an indebtedness for borrowed money, except in the ordinary course of business, but in any case not for amounts greater than Ten Thousand ($10,000) Dollars;

    vi.    The granting or making by the Company or any of its subsidiaries of any mortgage or pledge, or the assumption or suffering to exist on, or the imposition on, any of its material properties or assets, any lien, charge, defect in title, or encumbrance of any kind, except liens for taxes not currently due;

    vii.    The loan or advance of money, credit (other than by the creation of accounts receivable in the ordinary course of business) or property by the Company or any of its subsidiaries;

    viii.    The hiring of any officer of the Company;

    ix.    The making of or commitment to make, by the Company or any of its subsidiaries, any capital expenditures, other than as specifically set forth in the budget reviewed by the Purchaser;

    x.    The approval of any transaction with an affiliate or related person of Lefkowitz for an amount greater than Ten Thousand ($10,000) Dollars;

    xi.    Any increase in the compensation paid to Lefkowitz, any officer of the Company;

    xii.    The entering into by the Company or any of its subsidiaries of any material agreement or amendment or termination of any existing material agreement except in the ordinary course of business.

(e)  So long as any of the Shares, the Note, the Warrant, the Warrant Shares or the Note Shares are outstanding the Purchaser shall have the right and full access, during normal business hours, to inspect and make copies of the Company's books and records.

(f)  In the event Purchaser shall invest or lend One Million Dollars ($1,000,000) or more in the Company other than the amounts to be advanced pursuant to the Note, the Purchaser shall be

permitted to designate one person to serve on the Company's board of directors. Such appointment shall be in addition to the right of the holders of the Series A Preferred Stock to elect one director pursuant to the Amended and Restated Certificate of Incorporation of the Company. The Company shall not increase the size of the board of directors to more than five (5) directors without the Purchaser's prior written approval.

(g)   Lefkowitz shall vote all of his interests in the Company and shall take all other necessary or desirable actions within his control, and the Company shall take all necessary and desirable actions, to effectuate the terms of this Agreement.

(h)   Lefkowitz will arrange for the deed owners of the property 1526 52nd Street, Brooklyn, New York to sign a blank purchase agreement, blank deed and all necessary closing documents needed to collateralize to the note.

5.   **Right of First Refusal.**

(a)   In the event the Company seeks to raise capital by issuing debt or equity other than in an arms' length transaction with an institutional venture capital investor, Purchaser or Purchaser's designee shall have the right to purchase additional shares of Common Stock for an amount equal to or up to the Maximum Loan Amount of the Note plus Two Million Dollars ($2,000,000). The purchase price of the Common Stock shall be determined so that following such transaction the Purchaser will own Common Stock that, together with the Series A Preferred Stock acquired by the Purchaser pursuant to this Agreement, represents: i. 35.33% of the voting, dividend and liquidation preferences of all capital stock in the Company (pro-rated if the Purchaser elects to exercise this right but for less than the full purchase price permitted hereby) if the Warrant provided for in this Agreement has been exercised upon by the Purchaser; or ii. 33.33% of the voting, dividend and liquidation preferences of all capital stock in the Company (pro-rated if the Purchaser elects to exercise this right but for less than the full purchase price permitted hereby) if the Warrant provided for in this Agreement has not been exercised upon by the Purchaser (the "Common Equity Right of First Refusal"). The Company shall provide no less than thirty (30) days' prior written notice (a "Sale Notice") to Purchaser of any such proposed issuance. The Sale Notice shall identify (i) the Company's bona fide intention to issue securities, (ii) the name and address of each proposed purchaser, and (iii) the number and amount of securities to be offered. The Purchaser may exercise this Common Equity Right of First Refusal, in whole or in part, by providing written notice to the Company of such election within 20 days of receipt of the Sale Notice. If the Purchaser exercises his right of first refusal hereunder, the Purchaser may pay for some or all of its purchase by cancelling an equivalent amount of the amount then due pursuant to the Note.

(b)   In the event the Company seeks to raise capital by issuing debt or equity other than in an arms' length transaction with an institutional venture capital investor, Purchaser or Purchaser's designee(s) shall have a right of first refusal to participate in such transaction at the purchase price and on the terms as the Company proposes to issue such interests to parties other

5

than the Purchaser (the "General Right of First Refusal"). The Company shall provide a Sale Notice no less than thirty (30) days' prior to any such proposed issuance. The Purchaser may exercise this General Right of First Refusal, in whole or in part, by providing written notice to the Company of such election within 20 days of receipt of the Sale Notice. If the Purchaser exercises his right of first refusal hereunder, the Purchaser may pay for some or all of its purchase by cancelling an equivalent amount of the amount then due pursuant to the Note.

(c)  If the Purchaser fails to exercise any of the rights of first refusal set out in this Section 5, the Company shall be permitted to raise capital on terms no less favorable to the Company than as set out in the Sale Notice until 180 days following the date of such Sale Notice.

6.    **Miscellaneous.** This Agreement, the Warrant and the Note constitute the entire agreement among the parties with respect to the subject matter hereof, provided that the parties acknowledge and agree that the Memorandum of Understanding executed between the Company and the Purchaser shall survive to the extent it relates to matters other than the specific transactions contemplated hereby. This Agreement may not be modified or amended except by an instrument in writing signed by all the parties hereto. This Agreement may be executed in two or more counterparts and via facsimile, email or other electronic means, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its provisions regarding conflicts of law.

**IN WITNESS WHEREOF**, the undersigned have executed this Loan and Stock and Warrant Purchase Agreement as of the date first set out above.

VETCARE HEALTH, INC.

By: _____
Yitzchok Lefkowitz, its
President & Secretary

_____
Sender Ashkenazi, Principal

_____
Yitzchok Lefkowitz, Individually

6

# VETCARE HEALTH, INC.
## Non-Negotiable Convertible Promissory Note

$1,000,000                                                                           March 12, 2014
New York, New York

       **FOR VALUE RECEIVED**, the undersigned **VetCare Health, INC.**, a New York corporation (the "Maker"), hereby promises to pay no later than December 31, 2015 (the "Maturity Date"), unless sooner payable under the terms hereof, to **Sender Ashkenazi** (the "Holder"), or order, the principal amount of One Million ($1,000,000) Dollars or such portion thereof as may be advanced by the Holder (the "principal amount") pursuant to Section 1 of the Loan and Stock and Warrant Purchase Agreement dated effective as of March 12, 2014 among the Maker, the Holder and Yitzchok Lefkowitz (the "Loan Agreement").

1. The Maker irrevocably authorizes the Holder to make or cause to be made, on a schedule, which may be attached to this Note, at or following the time of making any Loan (as defined in the Loan Agreement), an appropriate notation reflecting such transaction and the then aggregate unpaid principal amount. Failure of the Holder to make any such notation shall not, however, affect any obligation of the Maker hereunder or under the Loan Agreement.

2. At any time from and after the Maturity Date, if this Note is not then repaid in full, the Holder shall have the right, but not the obligation, to convert (the "Conversion Right") the then outstanding principal amount into three (3) shares of Series A Preferred Stock of the Maker. The Conversion Right may be exercised by written notice to the Maker at its principal corporate office (the "Conversion Notice") specifying (a) that the Holder elects to convert this Note and (b) the name or names (with address) to which Series A Preferred Shares are to be issued. As soon as practicable after the delivery of the Conversion Notice, but in no event later than five Business Days thereafter, the Maker shall (i) take all actions and execute all documents necessary to effect the issuance and registration of such Series A Preferred Shares on the share registry of the Maker and (ii) issue to the Holder three (3) fully paid and non-assessable Series A Preferred Shares. The Maker covenants that it will at all times reserve and maintain authority to issue, solely for the purpose of issue or delivery upon any conversion herein provided, three (3) shares of Series A Preferred Stock upon conversion of this Note. The Maker covenants that all Series A Preferred Shares, when issued or delivered upon conversion of this Note, shall be duly and validly issued and fully paid, non-assessable and free and clear of all Liens.

3. On the Maturity Date or on any accelerated maturity (by default or otherwise) of this Note, the Maker will pay the entire principal amount of this Note then outstanding. Payments shall be made at the principal office of the Holder or at such other place as the Holder may designate to the Maker in writing. The Maker may at any time or from time to time prior to the conversion of this Note pursuant to Section 2 hereof, prepay all or part of the principal amount of this Note, in cash only, without penalty.

4. The occurrence of any one or more of the following events shall constitute an event of default under this Note (each herein referred to as an "Event of Default"):

   i. The Maker shall fail to make any payment in respect of the principal of this Note when due, whether at maturity or by acceleration or otherwise;

   ii. Any representation or warranty made by the Maker in Loan Agreement or any other document delivered in connection therewith shall prove to have been misleading or inaccurate in any material respect at the time it was made;

   iii. The Maker shall: (a) commence a voluntary case under Title 11 of the United States Code as from time to time in effect, or authorize, by appropriate proceedings of its Board of Directors or other governing body, the commencement of such a voluntary case; (b) have filed against it a petition commencing an involuntary case under said Title 11; (c) seek relief as a debtor under any present or future applicable law of any jurisdiction relating to the liquidation, dissolution or reorganization of debtors or other similar relief or to the modification or alteration of the rights of creditors, or consent to or acquiesce in such relief; (d) have entered an order by a court of competent jurisdiction (i) finding it to be bankrupt or insolvent, (ii) ordering or approving its liquidation, reorganization or any modification or alteration of the rights of its creditors, (iii) assuming custody of, or appointing a receiver or other custodian for, all or a substantial part of its property; (e) make an assignment for the benefit of, or enter into a composition with, its creditors, or appoint or consent to the appointment of a receiver or other custodian for all or a substantial part of its property; or (f) admit in writing its inability to pay its debts as they become due;

   iv. Any default shall exist and remain unwaived or uncured with respect to any indebtedness of the Maker in excess of $50,000, either singly or in the aggregate, including the failure to pay any such indebtedness when due whether by acceleration or otherwise, or any such indebtedness shall have been declared to be due and payable prior to its stated maturity, or any event or circumstance shall occur which permits, or with the lapse of time or giving of notice or both would permit, the acceleration of the maturity of any such indebtedness by the holders thereof.

5. Upon the occurrence of an Event of Default:

   i. The Holder may proceed to protect and enforce its rights under this Note by suit in equity (including without limitation a suit for rescission), an action at law for damages, and/or other appropriate proceedings either for specific performance of any provision contained in this Note or the Loan Agreement, or in aid of the exercise of any power granted to it in this Note (the Maker hereby acknowledging that the Holder's remedies at law may be inadequate); and

   ii. The Holder may, by notice to the Maker declare all or any part of the unpaid principal amount of this Note then outstanding to be forthwith due and payable,

2

21-22397-rdd   Doc 24-1   Filed 07/30/21   Entered 07/30/21 12:18:05   Exhibit A
Vetcare Loan Documents   Pg 4 of 9
FILED: KINGS COUNTY CLERK 12/19/2018 09:43 AM
NYSCEF DOC. NO. 65
INDEX NO. 515379/2018
RECEIVED NYSCEF: 12/19/2018

and thereupon such unpaid principal amount or part thereof, shall mature and become so due and payable without presentation, protest or further demand or notice of any kind, all of which are hereby waived.

6. **Miscellaneous.** This Note shall be governed by and construed in accordance with the domestic substantive laws of the State of New York, without giving effect to any choice or conflict of law provision or rule that would cause the application of the domestic substantive laws of any other jurisdiction. The parties hereto hereby waive presentment demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance and enforcement of this Note. No course of dealing and no delay on the part of the Holder in exercising any right, power or remedy conferred hereby shall be exclusive of any other right, power or remedy referred to herein or now or hereafter available.

**IN WITNESS WHEREOF**, the Maker has executed the Note hereof as an instrument under seal as of the day and year first above written.

VETCARE HEALTH, INC.

By: _____
Yitzchok Lefkowitz, its President