FILED: KINGS COUNTY CLERK 12/19/2018 09:43 AM    INDEX NO. 515379/2018
NYSCEF DOC. NO. 62    RECEIVED NYSCEF: 12/19/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X

1526 52nd LLC,                                              Index No.: 515379/2018

                          Plaintiff(s),

            -against-                                       **AFFIRMATION IN OPPOSITION**

BLUMA LEFKOWITZ a/k/a BLUMA LEFKOWTIZ,

                          Defendant(s).

-----------------------------------------------------------------X

YITZCHOK LEFKOWITZ, for religious reasons, hereby affirms the following statements are true under penalty of perjury:

1.      I am fully familiar with the facts and circumstances of this matter. I submit this affirmation in response to the affirmation filed on or about December 4, 2018, by attorney Norman Seidenfeld "in Further Support of Plaintiff's Motion" ("Seidenfeld Affirmation") and in opposition to the Plaintiff's order to show cause to stay the proceedings to evict Rivka and Alexander Ashkenazi from the Premises owned by my wife.

2.      I am advised that the Seidenfeld Affirmation is improper as it raises new claims and documents for the first time in an unauthorized reply which the Court may properly reject. I have prepared this affirmation to address the many untruths and omissions therein and ask this Court to accept it in response.

14

3.    In short, Plaintiff's claim they are owners of the Premises, having executed a contract with my wife, and the claim that they paid for the purchase pursuant to a contract is simply untrue.

4.    In early 2014 Rivka Ashkenazi's husband, Sender Ashkenazi, with whom I have had numerous prior business dealings, and I engaged in discussions regarding a loan to my company Vetcare Health, Inc. ("Vetcare"), of which I am the managing member.

5.    Thereafter, on March 12, 2014 Sender Ashkenazi agreed to lend approximately $1 million in funds to Vetcare pursuant to a Loan and Stock and Warrant Purchase Agreement (the "Agreement" annexed as Exhibit "A").

6.    The contract, deed and related recording documents (collectively, the "Collateral") which Rivka Ashkenazi now claims to hold as the alleged sole member of the Plaintiff – LLC were given **solely** as security for this business loan given by Sender (a/k/a Alexander) Ashkenazi to Vetcare.

7.    In addition to the Agreement, I executed a Note to Sender Ashkenazi in my capacity as managing member of Vetcare. See Exhibit "B".

15

8.    Notably, as additional security and included among the terms of the Agreement was a provision that I "arrange for the deed owners of the property 1526 52nd St., Brooklyn, New York [previously identified as the "Premises"] to sign a blank purchase agreement, blank deed and necessary closing documents needed to collateralize to the note." Agreement at paragraph 4 (h).

9.    On April 1, 2014, at my request, my wife and Tova Greenbaum executed an undated contract of sale and rider in blank as well as an undated Deed and related documents ("Collateral").

10.   I delivered the Collateral to Sender Ashkenazi personally. He was well aware that the Collateral was given solely as security and that none of the documents were to be recorded except in the event of default.

11.   Pursuant to our Agreement, since there was no default the Ashkenazis had no right to record the deed or any of the Collateral documents.

12.   Vetcare's records indicate that some time that on April 1, 2014, the same day, the first loan payment pursuant to the Agreement, in the amount of $560,000, was wired to Norman Seidenfeld on Ashkenazi's behalf which monies were to be disbursed to Vetcare.

16

FILED: KINGS COUNTY CLERK 11/07/2023 11:43 AM
NYSCEF DOC. NO. 62
State Court Affirmations    Pg 4 of 29
INDEX NO. 515379/2018
RECEIVED NYSCEF: 12/19/2018
Exhibit C
Entered 11/30/21 12:18:05

13.    Seidenfeld now claims, without any support, that the funds were wired into his account "for Rivka Ashkenazi." Seidenfeld Affirmation at paragraph 5. The Seidenfeld Affirmation also falsely alleges without support that there was an agreement that the $560,000 was a down payment. Seidenfeld Affirmation at paragraph 6.

14.    Contrary to Seidenfeld's claim, Sender Ashkenazy caused $560,000.00 to be wired to Seidenfeld representing the first disbursement on the Vetcare loan. Indeed, while I had given Ashkenazy a list of how Vetcare wanted to disburse the initial loan disbursement of $560,000.00 I never spoke with or directed Seidenfeld on the disbursements. I can only presume that he obtained direction from Ashkenazy.

15.    All of the monies lent to Vetcare were repaid on or before April 25, 2015 and the Collateral given Sender Ashkenazi on behalf of Vetcare should have been surrendered or destroyed thereafter. A copy of my Loan Repayment Acknowledgment from Vetcare to Sender Ashkenazi is annexed hereto as Exhibit "C."

16.    I have reviewed the Seidenfeld Affirmation which makes the false assertion that Rivka Ashkenazi entered into a contract of sale for the premises. Seidenfeld Affirmation at paragraph 3. Indeed, the contract was never executed by Rivka Ashkenazi on either the contract form or rider the sole signature purporting to be

17

that of Rivka being a blank assignment below the signature portion of the contract.

17. Seidenfeld also indicates that there was an agreement that the down payment could be released to seller prior to closing and that I directed said release. This is utterly false as there was no down payment and I had no conversations with Seidenfeld regarding release of any funds. Conveniently Seidenfeld has offered no documents to support this wild claim.

18. I understand that Ashkenazy is claiming their occupancy of the Premises corroborates their claim of ownership. However, what they have chosen to carefully hide from this Court is that occupancy began in early 2014, long before the alleged transfer of August 1, 2014.

19. In early 2014 Sender Ashkenazi asked to use the Premises, which was vacant, in relation to the distribution of various items on behalf of charities in which he was involved. Tova, Bluma and I discussed this and agreed the Ashkenazi's could do so, on a month to month basis, in consideration of their paying the mortgage amount as rent.

20. The most obvious proof that Seidenfeld's representations are false is his claim that my wife, together with Tova Greenbaum, executed the deed herein "on or

18

about August 1, 2014."

21.    I am shocked that Seidenfeld claims on July 28, 2014 he notarized signatures of my wife and co-owner on the deed dated August 1, 2014 when I know that the deed in blank that was given to Ashkenazy was executed on April 1, 2014.

22.    As stated above, I procured and delivered a signed deed in blank and signed contract in blank pursuant to the loan agreement to Ashkenazy on or about April 1, 2014.

23.    As my wife has averred, she has never met Norman Seidenfeld, never spoken to him, has never been to his office and would not have signed documents on either July 28, 2014 or on August 1, 2014 as it appears on the deed.

24.    Signatures on those dates would have been religiously prohibited as July 28, 2014 corresponds to the first day of the Hebrew month of Av. The first nine days of the month of Av, commencing on the prior day at sunset, are a period of mourning which commemorates the destruction of the Holy Temple in Jerusalem.

25.    It is a basic tenant of our religious belief that, absent dire circumstances, no contracts, agreements or Court proceedings are to be engaged in or executed during these nine days. The documents certainly do not qualify as such.

19

FILED: KINGS COUNTY CLERK 12/19/2018 09:43 AM INDEX NO. 515379/2018
NYSCEF DOC. NO. 62                                                    RECEIVED NYSCEF: 12/19/2018

26.  Surely if the Ashkenazy's purchased the Premises as they claim, at minimum, they would have opened their own electric and gas accounts, and paid their own water bill. The fact that they have done neither speaks volumes.

27.  In stark contrast, the true intentions of giving the Collateral herein is seen as my wife has continued to pay the electric, taxes and other expenses such as water for the Premises long after the alleged deed dated August 1, 2014. See Exhibit "D" and Exhibit "E".

28.  Based on the foregoing, it is submitted that neither the Ashkenazis individually or as members of any LLC have the right to remain in possession of my wife's property and they should not be any stay of their eviction from the property.

WHEREFORE, I ask this court to deny the stay requested by the Ashkenazis so that my wife may recover the Premises and the landlord-tenant court, together, with such other and further relief as this court may deem proper.

Yitzchok Lefkowitz

Affirmed before me this 19th day of December 2018

_____
Notary Public

RACHEL ELBOGEN
NOTARY PUBLIC, State of New York
No. 01EL6180420
Qualified in Kings County
Commission Expires Jan. 14, 2020

20

FILED: KINGS COUNTY CLERK 12/19/2018 09:43 AM

NYSCEF DOC. NO. 63

21-22397-rdd   Doc 24-3   Filed 07/30/21   Entered 07/30/21 12:18:05   Exhibit C

State Court Affirmations   Pg 8 of 29

INDEX NO. 515379/2018

RECEIVED NYSCEF: 12/19/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X

1526 52nd LLC

                    Plaintiff(s),

      -against-

BLUMA LEFKOWITZ a/k/a BLUMA LEFKOWTIZ
                    Defendant(s).

-----------------------------------------------------------------X

Index No.: 515379/2018

**AFFIRMATION IN OPPOSITION**

BLUMA LEFKOWITZ, for religious reasons, hereby affirms the following statements are true under penalty of perjury:

1.    I am fully familiar with the facts and circumstances of this matter. I submit this affirmation in response to the affirmation filed on or about December 4, 2018, by attorney Norman Seidenfeld "in Further Support of Plaintiff's Motion" ("Seidenfeld Affirmation") and in further opposition to Plaintiff's order to show cause to stay the summary holdover proceedings in the Civil Court of the City of New York that seeks to recover the Premises from Rivka and Alexander Ashkenazi.

2.    I understand that the Seidenfeld Affirmation is an unauthorized reply raising new claims and containing new documents for the first time which the Court may properly reject. I have prepared this affirmation to address the many untruths and omissions therein and ask this Court to accept same.

7

FILED: KINGS COUNTY CLERK 12/19/2018 08:43 AM
NYSCEF DOC. NO. 63
State Court Affirmations    Pg 9 of 29
INDEX NO. 515379/2018
RECEIVED NYSCEF: 12/19/2018
Exhibit C

3. I am the fee owner of the Premises and named Defendant herein. I first acquired the Premises in fee simple in or about June 2001, and in or about October 2006 granted an undivided 50% interest in the premises to Tova Greenbaum.

4. I never executed any contract with Plaintiff, executed a deed to Plaintiff for the Premises or received a contract deposit of $560,000.00, much less any other moneys for the purchase of the Premises. Those claims are all perjurious.

5. In or about March 2014, my husband advised me that Sender Ashkenazi was loaning approximately $1 million to Vetcare (my husband's company) and my husband asked me and my co-owner Tova Greenbaum to agree to pledge the Premises as collateral for the loan.

6. Thereafter, on April 1, 2014 both Tova and I, at the request and instruction of my husband to secure the loan to my husband's company Vetcare from Sender (a/k/a Alexander) Ashkenazi, the husband of Rivka Ashkenazi, executed a contract of sale and rider in blank as well as a Deed in blank and related documents.

7. I gave these documents to my husband either that same date of April 1, 2014 or a few days later and understood that when the loan was paid, Ashkenazy would

8

FILED: KINGS COUNTY CLERK 12/19/2018 09:43 AM

NYSCEF DOC. NO. 63

21-22397-rdd Doc 24-3 Filed 07/30/21 Entered 07/30/21 12:18:05 Exhibit C
State Court Affirmations Pg 10 of 29

INDEX NO. 515379/2018

RECEIVED NYSCEF: 12/19/2018

return or destroy them. I never dreamed that Askenazy would fill in the documents and claim he paid for my house.

8. But for the fact that my husband, Yitzchok Lefkowitz, was acquainted with, and has had numerous business dealings with Sender (a/k/a Alexander) Ashkenazi, (Rivka Ashkenazi's husband), we never would have trusted him and pledged the Premises as security.

9. I have reviewed the copy of the deed recorded by Seidenfeld and observe that it contains numerous additions, including dating, a notary by Seidenfeld, figures and initials, none of which were placed on the pages by me or my co-owner, Tova Greenbaum.

10. Markedly, and deserving of the strongest rebuke, Norman Seidenfeld's notarization of my signature on July 28, 2018 is a fraud. I have never met Norman Seidenfeld and certainly never signed a document in front of him.

11. As I stated above, both the signatures on this contract and the deed were applied on or about April 1, 2014 when the documents were executed in blank and certainly not given before Mr. Seidenfeld, who I never met, on July 28, 2014, or August 1, 2014.

9

12. I know to an absolute certainly that I did not sign anything before Seidenfeld. Moreover, I never would have appeared before any notary on July 28, 2014 or on the date that appears on the deed of August 1, 2014 as they are during the nine days of Av when no new business is transacted.

13. July 28, 2014 corresponded to the first day of the Hebrew month of Av. The first nine days of the month of Av, commencing on the prior day at sunset, are a period of mourning commemorating the destruction of the Holy Temple in Jerusalem. It is a basic tenant of my religious belief that no unnecessary contracts, agreements or Court proceedings are to be engaged in during these nine days. I have never executed documents during this period.

14. Norman Seidenfeld's claim that he notarized my signature and that of Tova Greenbaum on July 28, 2014 is simply a lie. It should be noted that while he claims that he notarized our signatures on the deed on July 28, 2018 the deed itself is dated August 1, 2014. In either event, it never happened.

15. I never received any proceeds on the contract purported sale, nor do I believe any payments were given to my co-owner Tova Greenbaum. Indeed, I never authorized Seidenfeld to tender moneys. I find it especially curious that Seidenfeld claims that although the contract of sale was between me, Tova Greenbaum and Ashkenazy he nevertheless released $560,000.00 the same day

10

FILED: KINGS COUNTY CLERK 12/19/2018 09:43 AM

NYSCEF DOC. NO. 63

21-22397-rdd   Doc 24-3   Filed 07/30/21   Entered 07/30/21 12:18:05   INDEX NO. 515379/2018 Exhibit C
State Court Affirmations   Pg 12 of 29

RECEIVED NYSCEF: 12/19/2018

the contract was allegedly signed based on alleged direction from my husband. Opportunely he has no written authority from either Tova Greenbaum or me although we were the alleged sellers.

16.     However, as set forth above I never spoke to attorney Seidenfeld, corresponded with him and certainly did not authorize anyone to do so on my behalf. As I said earlier, there simply was no agreement to sell the Premises.

17.     I understand that Plaintiff has made much ado about being in occupancy of the Premises and touted it as proof of the sale.  Such is another lie as Plaintiff took occupancy in early 2014 prior to the loan being given.

18.     In fact, in early 2014, Sender Ashkenazi asked to use the Premises, which were vacant at the time, in relation to the distribution of various items on behalf of charities he was involved with. We agreed that he could use it on a month to month basis, on condition he pay my monthly mortgage payment on the Premises as the rental amount.

19.     The $8,000.00 check payable to me and noted in the exhibits to the Seidenfeld Affirmation was from Vetcare in consideration of my expenses in execution of the Collateral documents.

11

20.    Upon information and belief, Vetcare never defaulted on the loan from Ashkenazi and the deed given as security should have been surrendered or destroyed in or about April 2015.

21.    The contract, deed, and transfer documents which I executed herein were done solely to allow the Premises to be used as collateral for a loan to Vetcare and were to be held, not filled in and filed.

22.    There was never any intention to voluntarily transfer ownership of the property. Perhaps the best evidence I can offer is that, despite the documents, I continued to be responsible for the Premises including taxes (see Exhibit "E") and utilities (see Exhibit "E") long after delivery of those instruments.

23.    The circumstances in the Agreement by which either of the Ashkenazis had any rights to record the deed has long been satisfied.

24.    I am advised that it is the mandate of this Court to "do equity" and trust that now that the sharp dealing of the Ashkenazi's herein has been shown to the Court that this motion to prevent me from removing them from my Premises will be denied.

12

WHEREFORE, I ask this court to deny the stay requested by the Ashkenazis so that I may recover my Premises and the landlord-tenant court, together with such other and further relief as this court may deem proper.

Bluma Lefkowitz

Affirmed before me this 14th
day of December 2018

_____
Notary Public

RACHEL ELBOGEN
NOTARY PUBLIC, State of New York
No. 01EL6180420
Qualified in Kings County
Commission Expires Jan. 14, 2020

13

FILED: KINGS COUNTY CLERK 01/04/2021 01:45 PM

NYSCEF DOC. NO. 162

21-22397-rdd Doc 24-3 Filed 07/30/21 Entered 07/30/21 12:18:05 INDEXhNIOt. C515379/2018
State Court Affirmations Pg 15 of 29

RECEIVED NYSCEF: 01/04/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------X

1526 52nd LLC,

                    Plaintiff,

      -against-

BLUMA LEFKOWITZ a/k/a BLUMA LEFKOWTIZ

                   Defendant.

------------------------------------------------------------------X

Index No.: 515379/2018

**AFFIRMATION IN REPLY**

Dan M. Blumenthal, an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following under penalties of perjury:

1.    I am special counsel to Wenig Saltiel LLP, attorneys for Defendant Bluma Lefkowitz a/k/a Bluma Lefkowtiz ("Lefkowitz") and to the extent alleged herein, have personal knowledge of the facts set forth below.

2.    This Affirmation is respectfully submitted in Reply and further support of the motion by Defendant Lefkowitz for an Order granting her summary judgment and dismissing this action for the failure of Rivka Ashkenazi ("Ashkenazi") to demonstrate standing to proceed as the now-defunct 1526 52nd LLC ("Plaintiff" or "LLC") and for proceeding pursuant to a void title to 1526 52nd Street,

- 1 -

Brooklyn, New York 11219 (the "Premises"), a property which Lefkowitz has held an ownership interest in for nearly two decades.

3.    Plaintiff's opposition offers no legally cognizable grounds for denial of relief as these two facts, shown by documentary evidence, mandate dismissal. The technical objections are nothing more than a smokescreen to camouflage the lack of standing to proceed in the name of the LLC and the lack of a lawful chain of title.

### PLAINTIFF'S CLAIMS IN OPPOSITION

4.    Plaintiff's Point 1" argument against summary judgment is that the moving papers failed to include a copy of Defendant's Answer.  To quell any spurious claim of prejudice, such a copy is annexed hereto as Exhibit "A.

5.    While "the failure to attach the requisite pleadings to the moving papers generally requires denial of the motion," Bonded Concrete v. Town of Saugerties, 3 A.D.3d 729, 730 (3d Dept.), lv. denied 2 N.Y.3d 793 (2004), such a dismissal would be without prejudice to renewal. see Greene v. Wood, 6 A.D.3d 976, 977, 775 N.Y.S.2d 192 (2004).

6.    Particularly in present circumstances of an overtaxed and understaffed courthouse, such an exercise in form over substance is without legal or logical basis.

- 2 -

7.    Much as is done in the appellate context, "the failure to include the complete
      pleadings on the motion may be excused when the record on appeal is
      sufficiently complete to address the merits." Welch v. Hauck, 18 A.D.3d 1096, 1098
      (3d Dept.), lv. denied 5 N.Y.3d 708 (2005).

8.    In addition to the copy of the Answer Exhibited herewith, the Answer is listed in
      the electronic files (NYSCEF Doc. #81) which are now readily available to the
      court.

9.    Certainly, dismissal is inappropriate for the de minimis failure to include one more
      copy of the answer. Matter of Estate of Bordell, 162 A.D.3d 1262 (3d Dept. 2018)
      (petition submitted in connection with earlier summary judgment motion
      deemed 'before the court').

### SUMMARY JUDGMENT STANDARD

10.   The defendant in moving for summary judgment has met her initial burden of
      showing entitlement to judgment as a matter of law by demonstrating the
      absence of any material issue of fact through admissible evidence. See Alvarez
      v. Prospect Hosp., 68 N.Y.2d 320 (1986).

11.   Once that prima facie showing has been made, the burden then shifts to the
      opponent to come forward with some proof in admissible form that there are

- 3 -

genuine issues of material fact which preclude the granting of summary judgment. See Israelson v. Rubin, 20 A.D.2d 668 (2d Dept. 1964); Zuckerman v. City of New York, 49 N.Y.2d 557 (1980); Andre v. Pomeroy, 35 N.Y.2d 361 (1974).

12. It is well-established that mere conclusory allegations, unsubstantiated assertions, and speculation are wholly insufficient to defeat a motion for summary judgment. Lincoln Life & Annuity Co. of New York v. Lenke Halpert 2006 A Irrevocable Life Ins., 30 Misc.3d 1223 (Sup Ct, Kings County 2011)(citing 12 DePodwin & Murphy v. Fonvil, 38 A.D.3d 827 (2d Dept. 2007); Carleton Studio v. MONY Life Ins. Co., 18 A.D.3d 491 (2d Dept. 2005).

13. The law is clear that only *bona fide* issues supported by admissible evidentiary proof, and not conclusory or irrelevant allegations, can defeat a motion for summary judgment. *Fender v. Prescott*, 101 A.D.2d 418, 425 (1st Dept. 1984), *aff'd*, 64 N.Y.2d 1077 (1985).

14. Plaintiff puts forth no such evidentiary proof nor does she demonstrate a triable issue of material fact.

15. If the opposing party does not controvert the facts appearing in the movant's papers, those facts are deemed admitted; there is, in effect a concession that no question of facts exists. Juehne and Agel, Inc. v. F.W. Balden, 36 N.Y.2d 539,

- 4 -

FILED: KINGS COUNTY CLERK 01/04/2021 01:40 PM

State Court Affirmations  Pg 19 of 29

NYSCEF DOC. NO. 162

21-22397-rdd Doc 24-3 Filed 07/30/21 Entered 07/30/21 12:18:05 Exhibit C

RECEIVED NYSCEF: 01/04/2021

INDEX NO. 515379/2018

544 (1975); <u>John William Costello Assoc., Inc. v. Standard Metals Corp.</u>, 99 A.D. 2d

227, 229 (1st Dep't 1984).

**RIVKA ASHKENAZI CANNOT PROVE AUTHORITY TO ACT FOR THE PLAINTIFF**

16. Rivka Ashkenazi has alleged that she was the sole member of the LLC. As such, she would be expected to have conformed with, and to produce evidence of compliance with corporate formalities.

17. Rivka Ashkenazi was not the organizer of the plaintiff. "An organizer may, but need not be, a member of the limited liability company that he or she forms." Limited Liability Corporations Law ("LLC L") §203(b).

18. Here, Attorney Norman Seidenfeld was the sole incorporator, alleging that he "formed 1526 52"d LLC on Mrs. Ashkenazi's behalf." Affidavit of Norman Seidenfeld, dated December 4, 2018 ("Seidenfeld Aff."), at paragraph 8.

19. Seidenfeld concludes that "[t]here was never an understanding that the Seller's would be members of 1526 52nd LLC." Seidenfeld Aff. at para. 9. While he can speak to his understanding, any broader conclusion is at best, speculative hearsay.

20. Seidenfeld's submission is devoid of any proof of the request, preparation,

-5-

execution, and filing of articles of organization of the limited liability company as required under the statute. ("LLC L") §203(b).

21.    A plaintiff, seeking to prosecute an action in corporate name must demonstrate their authority. Here, the sole official document bearing a name is the Secretary of State record, bearing the name of Bluma Lefkowitz as agent for service of process. **Exhibit "B"**

22.    As such, the motion must be granted and the action dismissed for the Ashkenazi proponents' failure to demonstrate any authority to proceed in the name of the LLC.

### THE ALLEGED DEED IS VOID OR VOIDABLE

23.    It is undisputed that, since on or about September 10, 2006, Lefkowitz held a joint interest in the Premises with Tova Greenbaum ("Greenbaum"), a relative. 2006 Deed recorded at CRFN 2007000601795 is annexed as **Exhibit "C"**.

24.    Rivka Ashkenazi claims, in her unproven role as a member of the LLC, under a deed which, if not void *ab initio*, is most certainly voidable. The August 1, 2014 deed to the LLC (**Exhibit "D"**) was purportedly closed at an undisclosed location "on or about August 1, 2014." Seidenfeld Aff. at para. 10.

- 6 -

25.   That the documents were duly notarized is improbable as the dates claimed fell within a period when religious observance. *See* Affirmation of Bluma Lefkowitz, dated November 12, 2020 ("Bluma Aff."), additional copy annexed as **Exhibit "E"**

26.   Further, Bluma Lefkowitz has never met Norman Seidenfeld (Bluma aff at para. 10), yet he has sworn that "Mrs. Lefkowitz appeared before him and was "known to him" or produced unspecified adequate evidence of her identity.

27.   It is a cornerstone of notarization that "[a]n acknowledgment must not be taken by any officer unless he knows or has satisfactory evidence, that the person making it is the person described in and who executed such instrument." Real Prop. Law § 303.

28.   The conspicuously re-dated 'August 1, 2017' deed purporting to convey the Premises from Tova Greenbaum and Bluma Lefkowitz (with a handwritten a/k/a of 'Bluma Lefkowtiz'), allegedly notarized by Seidenfeld for both grantors on July 31, 2017, is accompanied by an RP-5217-NYC tax form purportedly signed by Bluma and Tova on July 28, 2017, as well as a "smoking gun" indicator, a smoke-detector affidavit purportedly signed by Bluma and Tova and notarized by Norman Seidenfeld on July 28, 2017.

-7-

29.    Despite the precision and formality expected from a notary (let alone an attorney) Seidenfeld only claimed that "[o]n or about August 1, 2014, Sellers, Bluma Lefkowitz and Tova Greunbaum executed the deed for the Premises." This constitutes a strong indication that his notarization is false.

30.    The various inconclusive exhibits proffered, including the unsigned 'Post Closing' agreement annexed to Alexander Ashkenazi's affirmation, dated 2 weeks before the deed date and sent without comment is not dispositive of anything other than perhaps a discussion.

31.    While "[a] forged deed that contains a fraudulent signature is distinguished from a deed where the signature and authority for conveyance are acquired by fraudulent means'" (Faison v. Lewis, 25 N.Y.3d 220, 224 [2015]) here we appear to have both.

32.    As the distinction between a void conveyance and on which is voidable is only relevant where the acquirer is in good faith, without actual or constructive knowledge, and has given value, it is inapplicable to the LLC, let alone Rivka Ashkenazi.

33.    Rivka Ashkenazi has shown no rights in the Premises beyond possession. Her claims to an interest in the defunct LLC are unproven and the deed she seeks to

- 8 -

FILED: KINGS COUNTY CLERK 07/04/2021 12:18:05 PM INDEX NO. 515379/2018

NYSCEF DOC. NO. 162

21-22397-rdd   Doc 24-3   Filed 07/30/21   Entered 07/30/21 12:18:05   Exhibit C
State Court Affirmations   Pg 23 of 29   RECEIVED NYSCEF: 01/04/2021

enforce is clearly tainted by forgery and/or fraud.

34. Bluma Lefkowitz has waited long enough while her credit has been damaged, most recently by the Ashkenazis apparently defrauding Bluma's lender in claiming a Covid-related stay available only to the borrower. As such, summary judgment dismissing the instant action is appropriate.

## CONCLUSION

35. Summary Judgment promotes judicial economy where, as here, there is nothing to try. Michael V. v. James M., 83 N.Y.2d 178, 182 (1994). The proponent of this action has not demonstrated her authority to proceed, nor may she proceed to enforce a claim of title based on a void (or voidable) deed.

WHEREFORE, Defendant Bluma Lefkowitz again asks this Court to grant summary judgment dismissing the instant action with prejudice, together with such other relief as the court deems just and proper.

Dated:   January 4, 2021
             Brooklyn, New York

Dan M. Blumenthal

- 9 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------X

1526 52nd LLC

                Plaintiff(s),

      -against-

BLUMA LEFKOWITZ a/k/a BLUMA LEFKOWTIZ
                Defendant(s).

------------------------------------------------------------------X

Index No.: 515379/2018

**AFFIRMATION IN SUR-REPLY**

Dan M. Blumenthal, an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following under penalties of perjury:

1.    I am special counsel to Wenig Saltiel LLP, attorneys for Defendant Bluma Lefkowitz ("Lefkowitz") and to the extent alleged herein, have personal knowledge of the facts set forth below.

2.    This Affirmation is respectfully submitted in further opposition to the motion by order to show cause by Plaintiff ("OSC"), erroneously identified herein as 1526 52nd LLC, to stay the summary holdover proceeding currently pending before the Civil Court of the City of New York, County of Kings, Index #87732-LT-2018 captioned *Bluma Lefkowitz v. Rivka Ashkenazi and Alexander Ashkenazi* (the "Holdover    Proceeding")    while    this    action    is    pending.

FILED: KINGS COUNTY CLERK 12/19/2018 12:18:05   INDEX NO. 515379/2018
NYSCEF DOC. NO. 61            State Court Affirmations    Pg 25 of 29    RECEIVED NYSCEF: 12/19/2018

Exhibit C

3.  The OSC was initially supported by the affidavit of Rivka Ashkenazi, (the "Ashkenazi Affidavit"), which contains a number of inaccuracies and fails to report the true nature of the relationship between the parties to this action.

4.  On or about December 4, 2018, Plaintiff submitted the affirmation of attorney Norman Seidenfeld "In Further Support of Plaintiff's Motion" ("Seidenfeld Affirmation") which contains new allegations and new documents. By submitting these new documents and claims after Lefkowitz submitted her opposition papers Lefkowitz was deprived of the opportunity to comment on the new documents and new claims.

5.  As a procedural matter, the Seidenfeld Affirmation is an improper attempt by Plaintiff to file, without leave of Court, a reply on an order to show cause containing new claims and documents which is properly disregarded in its entirety and stricken from the record.

6.  Notwithstanding the procedural rule, Lefkowitz submits the instant Sur-reply to address the significant inaccuracies and omissions which are raised for the first time in the Seidenfeld Reply Affirmation and is appropriately accepted by the Court for that purpose.

2

7. Indeed, this Sur-reply is submitted for the limited purpose of supplying this Court with the annexed affirmations of Yitzchok and Bluma Lefkowitz, both dated December 18, 2018, documenting the multiple falsehoods and omissions in the Seidenfeld Affirmation and demonstrating that any interest in the subject premises ("Premises") passed to the LLC by error or fraud, as no consideration was paid for a purchase herein.

8. Accordingly the OSC must be denied for lack of standing as well as lack of merit.

## THE SUR-REPLY IS PROPERLY CONSIDERED BY THE COURT HEREIN

9. It is well settled that, even where a reply is permissible, facts and issues cannot be raised for the first time therein.

10. Such information is not properly considered by this Court. *Voytek Technology, Inc. v. Rapid Access Consulting, Inc.*, 279 A.D.2d 470, 719 N.Y.S.2d 112 (2d Dep't 2001) (documentary material in reply papers not to be considered).

11. Notwithstanding the general rule that a reply is not permitted on an order to show cause, should the Court in its discretion elect to accept the Seidenfeld Affirmation the annexed affirmations of Bluma Lefkowitz and Yitzchok Lefkowitz in Sur-reply are properly considered as well.

3

21-22397-rdd   Doc 24-3   Filed 07/30/21   Entered 07/30/21 12:18:05   Exhibit C
State Court Affirmations   Pg 27 of 29

INDEX NO. 515379/2018

RECEIVED NYSCEF: 12/19/2018

12.   This Court should observe that the documents submitted when closely reviewed only serve to highlight the inconsistencies of the Plaintiff's claims.

13.   Norman Seidenfeld claims to have notarized Bluma Lefkowitz and Tova Greenbaum's signatures on July 28, 2014 although the deed is dated August 1, 2014. Both July 28, 2014 and August 1, 2014 fall out during the nine days of Av when those of the Hebrew faith would never conduct new business, including the signing of a deed.

14.   Further, the alleged contract contains Ashkenazi's signature by the assignment line of the alleged contract, but it appears nowhere on the rider, and no assignment is annexed.

15.   It boggles the mind that Seidenfeld claims he received $560,000.00 on April 1, 2014 as a deposit on a contract of sale with Bluma Lefkowitz and Tova Greenbaum does not offer the court the documentation as to who sent the wire, and claims to have released funds that very same day before even receiving the signed contracts solely on the verbal direction of Bluma Lefkowitz's husband, a non-signatory to the contract.

16.   Contrary to the claims, and in accord with the documentary evidence that Plaintiff conveniently chose to hide from this Court in order to obtain relief to which it was not entitled, the Lefkowitz' affirmations and supporting documents

4

21-22397-rdd    Doc 24-3    Filed 07/30/21    Entered 07/30/21 12:18:05    Exhibit C
State Court Affirmations    Pg 28 of 29

evidence that these claims of contract, deed and moneys tendered for the purchase of the property are lies.

17. Instead, the deed in blank and closing documents in blank were tendered as security for a business loan which was repaid and rather than return the deed in blank and the closing documents in blank, Plaintiff wrongfully caused it to executed and recorded.

18. While all parties hereto share blame for poorly documented business transactions, Ashkenazi has elected to take advantage of unrecorded documents and papers given on trust and for express purposes other than conveyance to attempt to wrest title to the subject property from its rightful owners. She continues to erroneously claim sole membership in control of the named Plaintiff and has conflated the rights of the Plaintiff LLC with her individual rights.

## **CONCLUSION**

19. It is submitted that the submission of this action to the Court by Ashkenazi constitutes a fraud on this Court and should not be countenanced by this Court.

20.    Clearly, the misstatements overwhelm and serve to highlight that the moving party lacks both standing and any meritorious claim herein and, accordingly, the OSC is properly denied.

WHEREFORE, it is respectfully submitted that the relief sought in the OSC must be denied as Plaintiff lacks standing herein and has shown no likelihood of success on the merits.

Dated: December 19, 2018
Brooklyn, New York

_____
Dan M. Blumenthal