RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for 1526 52nd LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :
In re:                                       :        Chapter 11
                                             :
FIFTEEN TWENTY SIX FIFTY SECOND LLC,         :        Case No.:  21-22397 (RDD)
                                             :
            Debtor.                          :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### REPLY TO DEBTOR'S OBJECTION TO MOTION OF 1526 52ND LLC
### TO DISMISS THE DEBTOR'S CHAPTER 11 CASE AND FOR SANCTIONS

1526 52nd LLC ("1526 LLC"), by its counsel, Rubin LLC, submits this reply motion (the

"Reply") to the objection (the "Objection") [ECF No. 24] filed by Fifteen Twenty Six Fifty Second

LLC (the "Debtor") to 1526 LLC's motion (the "Motion")[1] [ECF No. 19] for entry of an order

dismissing the Debtor's chapter 11 case of pursuant to section 1112(b) the Bankruptcy Code as a

bad faith filing, and to impose sanctions on the Debtor, Bluma Lefkowitz and Isaac Lefkowitz

(a/k/a Jack Lefkowitz) under section 105(a) of the Bankruptcy Code and/or Bankruptcy Rule 9011

for their improper and bad faith conduct in connection with the Debtor's chapter 11 case.  In

support of this Reply, 1526 LLC respectfully represents as follows:

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

## PRELIMINARY STATEMENT

1. The Debtor has not provided any valid justification for the filing of its petition, the circumstances of which bear all the indicia of a bad faith filing.  Nor has the Debtor provided any valid justification for Bluma Lefkowitz's fraudulent transfer of the Property to the Debtor immediately before the Debtor's bankruptcy filing, which was made after (i) the Property had been the subject of 1526 LLC's quiet title action that had been pending in the State Court for three years, and (ii) the State Court wrote on March 23, 2021 that "the evidence presented by both parties … shows the transactional nature of these negotiations as a sale/purchase of the premises."  Summary Judgment Decision at 8, annexed as Exhibit M to the Motion.

2. 1526 LLC and its principal are prejudiced by that fraudulent transfer and the Debtor's bankruptcy filing.  These actions are part of a transparent scheme to move title to the Property away from the defendant in the State Court Action so as to defeat the impact of a judgment quieting title that 1526 LLC hoped to win against Bluma Lefkowitz in that action, and to facilitate a section 363 sale of the Property of the home in which the principal of 1526 LLC lives with her family, before any adjudication of 1526 LLC's rights in the State Court Action.  The notion that 1526 LLC and Rivka Ashkenazi lack standing as parties-in-interest to challenge the validity of this chapter 11 filing given the facts and circumstances is wrong.

3. 1526 LLC's failure to make certain mortgage payments within the past year may have justified a motion by Bluma Lefkowitz in the State Court Action to compel payment, but that did not justify the Debtor's chapter 11 filing.  The Debtor does not own the Property, no foreclosure action was commenced against the Property, and the Debtor admits that the Property is worth $4 million while the amount of the mortgage is only $1 million.  The newly-formed Debtor filed this case as a litigation tactic in a two-party dispute.

4.     As described below, the Debtor has ignored important documentary evidence that 1526 LLC presented in support of its motion, including the sworn statements of attorneys Seidenfeld and Rothstein regarding the transactions at issue.  Worse, the Debtor has advanced several factual statements in support of its objection that are demonstrably false, including the statement that the deed to 1526 LLC was not to be recorded but to be held in escrow.   In desperation, the Debtor has also presented nonsensical arguments that strain credulity, such as the arguments that (i) 1526 LLC was formed to hold the deed as "unofficial additional collateral" for a loan by Alexander Ashkenazi to Isaac Lefkowitz's company, and (ii) Rivka Ashkenazi's lawyer, Mr. Seidenfeld, formed 1526 LLC at Rivka Ashekanzi's request, but he made Bluma Lefkowitz its managing member.  This is the justification for Bluma Lefkowitz's alleged authority to transfer of the Property to herself in 2018 for no consideration without 1526 LLC's knowledge or consent.

5.     In short, the audacity of the Lefkowitzes knows no bounds.  This case should be dismissed as a bad faith filing and meaningful sanctions should be imposed.

### THE DEBTOR IGNORES PERTINENT DOCUMENTARY EVIDENCE

6.     The Debtor's Objection contains a number of false statements and exaggerated claims.[2]  But the Objection is equally notable for what it does not address.  The Debtor completely ignores the substantial documentary evidence filed in the State Court Action and annexed to the Motion establishing that 1526 LLC purchased the Property in a sale transaction, that the Vetcare

---

[2] A sample of the hyperbole contained in the Objection includes the Debtor's claims that (i) 1526 LLC has failed to "advance a shred of proof or credible explanation" as to 1526 LLC's standing to bring the Motion (Obj. ¶ 3), (ii) 1526 LLC "has no legal interest in the Property other than that of a squatter" (Obj. ¶ 78), and (iii) there "is simply no indicia of bad faith filing" (Obj. ¶ 91).  1526 LLC has advanced more than a shred of proof with respect to its standing; 1526 LLC has presented substantial documentary evidence in support of its purchase of the Property, the interest that its asserts is an ownership interest in the Property, not as a mere "squatter;" and it is beyond credible dispute that the Debtor's chapter 11 case checks every box for new debtor syndrome, which satisfies a prima facie showing of bad faith.

loan was subsequently and separately negotiated between Isaac Lefkowitz and Alexander Ashkenazi, and that Bluma Lefkowitz's transfers of the Property were unauthorized and illegal.

7.     For example, rather than explain the document that 1526 LLC annexed as Exhibit K to the Motion, showing Isaac Lefkowitz's execution of an acknowledgment that he received $750,000 in loan proceeds for the Vetcare loan, with specific references to the check numbers constituting the loan, the Debtor simply pretends the acknowledgment does not exist.  Instead, the Debtor filed what it characterizes as a "Loan Repayment Acknowledgment" that it claims was executed by Alexander Ashkenazi, but which Alexander Ashkenazi did not prepare and never signed.  Indeed, the document signed only by Isaac Lefkowitz.

8.     Similarly, the Debtor ignores the affirmation of Rivka Ashkenazi's real estate attorney, Norman Seidenfeld, Esq., wherein he affirmed that he formed 1526 LLC for the benefit of Rivka Ashkenazi at her request, and that Bluma Lefkowitz and Tova Greenbaum had no interest in 1526 LLC.  Instead, the Debtor filed what it purports to be an "incorporation document" that lists Bluma Lefkowitz as the agent for service of process for 1526 LLC.  The Debtor's "incorporation document" is nothing more than a printout of a New York Department of State website business entity search result.  As shown below, further scrutiny reveals that Bluma Lefkowitz is only listed as the agent for service of process because she changed that information in July 2018 (without the authority to do so), after she had already illegally signed a deed transferring the Property from 1526 LLC to herself.

9.     In yet another example, the Debtor ignores the post-closing agreement that 1526 LLC annexed as Exhibit G to the Motion, a draft document attached to an email that Isaac Lefkowitz sent to Mr. Seidenfeld and Alexander Ashkenazi, containing statements that the Property was sold by Bluma Lefkowitz and Tova Greenbaum to 1526 LLC, and that Alexander

Ashkenazi was the beneficial owner of 1526 LLC.  In willful disregard of this document, the Debtor insists that the there was no sale of the Property, and that the Sale Contract was merely to be prepared in blank, held in escrow, and used as collateral for the Vetcare loan.

10.     The Debtor must intentionally overlook these and other facts set forth in the Motion in order to concoct a non-sensical story in service of its scheme to take the State Court Action away from Kings County Supreme Court.  It is obvious why the Debtor would want to do so.  In its decision denying Bluma Lefkowitz's motion for summary judgment, the State Court found that "[t]horoughly reviewing the exhibits presented by both parties, specifically emails and handwritten notes indicating accountings exchanged between Mr. Lefkowitz and Mr. Ashkenazi, shows the transactional nature of these negotiations *as a sale/purchase of the premises.*"  Summary Judgment Decision at 8 (emphasis added), annexed as Exhibit M to the Motion.[3]  Because the State Court has found that the Property was the subject of a sale transaction, the Debtor's assertions that there was never a sale of the Property, and that the Property was only used as collateral for the Vetcare loan, must also fail.

## THE DEBTOR HAS MADE DEMONSTRABLY
## FALSE STATEMENTS IN ITS OBJECTION

11.     In its Objection, the Debtor justifies the filing of its chapter 11 case based on several demonstrably false statements that are plainly contradicted by the documentary evidence and prior statements of Bluma and Isaac Lefkowitz.  Five of the most egregious of the false statements are described below.

---

[3] The State Court's Summary Judgment Decision was a ruling on the *defendant's* motion for summary judgment.  To be clear, 1526 LLC did not move for summary judgment.  The State Court denied Bluma Lefkowitz's motion for summary judgment because material factual issues existed, while it still found that the transaction at issue was a sale of the Property.

**A.    Contrary To The Debtor's Assertions, Bluma Lefkowitz Never Had
An Interest In 1526 LLC And Was Not Authorized To Act On Its Behalf**

12.    At the core of the State Court Action (and the reason why 1526 LLC needed to commence a quiet title action) is Bluma Lefkowitz's unauthorized, illegal action taken in June 2018 signing a deed, purportedly as the managing member of 1526 LLC, and transferring the Property from 1526 LLC to herself, for no consideration.  To give truth to the lie that Bluma Lefkowitz was authorized to act on behalf of 1526 LLC, the Debtor falsely claims in its Objection that Bluma Lefkowitz was listed as the agent for service of process when the entity was first formed in 2014, stating as follows:

> On July 9, 2014, USA Corp. Inc., a corporate service company, formed an entity known as 1526 52nd LLC, the herein Movant.  Movant's incorporation documents indicate that Bluma was designated as agent for service of process, using her home address for such process.

Objection ¶ 29.  The Debtor annexed as Exhibit B to the Objection what are purported to be "incorporation documents" indicating Bluma Lefkowitz as the agent for service of process for 1526 LLC.

13.    The Debtor's statement in its Objection and inclusion of the "incorporation document" is seriously misleading at best.  The "incorporation document" annexed as Exhibit B to the Objection is nothing more than a printout from the New York Department of State business entity search website.  While the exhibit does list Bluma Lefkowitz as the agent for service of process at the address 1149 57th Street, Brooklyn, New York, the filing history for 1526 LLC (also available at the same New York Department of State website) shows that the service of process information for 1526 LLC was *changed* on July 17, 2018—shortly *after* Bluma Lefkowitz had already illegally signed over the deed for the Property to herself.  A copy of the New York Department of State printout for 1526 LLC's filing history is annexed hereto as <u>Exhibit A</u>.  *See* https://apps.dos.ny.gov/publicInquiry/FilingHistory (last visited Aug. 2, 2021).

14.    Annexed hereto as <u>Exhibit B</u> is the actual incorporation document, which shows (consistent with the Affirmation of Norman Seidenfeld, Esq., the real estate attorney for Rivka Ashkenazi in connection with the purchase of the Property, which was annexed as Exhibit E to the Motion) that 1526 LLC was formed on July 9, 2014 and the agent for service of process is listed as "The Limited Liability Company, 1562 52nd St., Brooklyn, NY 11219."  Bluma Lefkowitz's name does not appear anywhere in the 2014 incorporation documents.  Bluma Lefkowitz only appears as the agent for service of process on the New York Department of State website because she unilaterally changed that information on July 17, 2018.

15.    Moreover, as Mr. Seidenfeld affirmed under penalty of perjury, 1526 LLC was formed on behalf of Rivka Ashkenazi (the buyer) to take title to the Property, and neither Bluma Lefkowitz nor Tova Greenbaum (the sellers) had any interest in 1526 LLC.  *See* Exhibit E to Motion, Seidenfeld Affirmation ¶¶ 8-9.

16.    Not only is the statement, that Bluma Lefkowitz was the agent for service of process when 1526 LLC was formed, demonstrably false, the idea that Mr. Seidenfeld (the ***buyer's*** real estate attorney) would form an LLC to take title to the Property for the benefit of Bluma Lefkowitz (the ***seller***) makes no sense.  Whether the transaction at issue is viewed as a sale of the Property (which the documentary evidence supports, and the State Court already found), or if credence is given to the Debtor's unsupported theory that the Sale Contract was merely "unofficial collateral" for the Vetcare loan, there is no conceivable rationale for Mr. Seidenfeld to create 1526 LLC (at the request of his client Rivka Ashkenazi) and appoint Bluma Lefkowitz and Tova Greenbaum (who were on the other side of the transaction) to be the majority members of 1526 LLC.  A lender does not put a borrower in control of the lender's entity.  The Debtor has not explained why this would make sense, because it does not make sense and is not what happened.

7

**B.      It Is Evident That The Vetcare Loan Was Negotiated Separately From The Sale
Of The Property And The Property Was Not Collateral For The Vetcare Loan**

17.      Equally false are the Debtor's statements regarding the alleged execution in ***March
2014*** of a Loan and Stock and Warrant Purchase Agreement in connection with the Vetcare loan,
before the parties signed the Sale Contract.  The Debtor attached the purported Vetcare loan
agreement dated March 14, 2014 which contains the following provision:

> Lefkowitz will arrange for the deed owners of the property 1526 52nd
> Street, Brooklyn, New York to sign a blank purchase agreement, blank deed
> and all necessary closing documents need to collateralize to [*sic*] the note.

*See* Exhibit A to Objection, purported ***March 14, 2014*** Vetcare agreement, at Section 4(h).  This
document, which the Debtor filed with this Court and attested to under penalty of perjury, is
demonstrably false.

18.      As more fully described in the Motion, the $1 million loan to Vetcare was a
transaction between and among Vetcare, Alexander Ashkenazi and Isaac Lefkowitz that was
separate and apart from the sale of the Property, that was negotiated after the sale of the Property.
The Vetcare loan agreement could not have been executed in March 2014 because Isaac (Jack)
Lefkowitz signed only a memorandum of understanding with respect to the Vetcare loan on
***August 25, 2014***.  *See* Exhibit J to Motion.  That memorandum of understanding contains no
reference to the Property.  Additionally, counsel for Alexander Ashkenazi on the Vetcare loan,
David Rothstein, Esq., affirmed under penalty of perjury in the State Court Action that the loan
agreement was not finalized and executed until late 2014.  Consistent with Mr. Rothstein's
testimony, annexed hereto as Exhibit C is a copy of a ***November 25, 2014*** email from Mr. Rothstein
to Isaac Lefkowitz and Alexander Ashkenazi attaching a draft Vetcare loan agreement.  Notably,
the ***draft*** agreement circulated by Mr. Rothstein on ***November 25, 2014*** did not include any
reference to the Property and did not include the fraudulent Section 4(h) contained in the bogus

8

Vetcare agreement purportedly executed on *March 14, 2014*.  It is inconceivable that draft versions of the Vetcare loan agreement would be circulated in November of 2014, if the agreement had already been executed eight months earlier, in March 2014.

19.    Thus, the Debtor's claim that the Vetcare agreement was negotiated and executed before the Sale Contract was executed is demonstrably false.  This false claim serves as the foundation for the Debtor's assertion that the Sale Contract was to be executed in blank, held in escrow, and used as additional "unofficial" collateral for the Vetcare loan.  The Debtor's entire premise is disproved and should be disregarded.

**C.    The Parties Never Intended To Hold The Sale Contract And Deed
In Escrow Pending Default Or Repayment Of The Vetcare Loan**

20.    The Debtor has claimed in its prior filings, and continues to claim in its Objection, that "[t]he contract of sale and deed were delivered to Sender [Alexander Ashkenazi] to be held in escrow by his attorney, Norman Seidenfeld [ ] pending default or repayment of the loan, in which case (repayment) the contract of sale and deed were to be returned to Bluma."  Objection ¶ 24. This statement is also demonstrably false.

21.    Annexed hereto as Exhibit D is an email that Isaac Lefkowitz sent to Mr. Seidenfeld on July 14, 2014 requesting that Mr. Seidenfeld revise the post-closing agreement and have it signed, in Isaac Lefkowitz's own words, "before *filing the deed*".  *See* Exhibit D (emphasis added). Annexed hereto as Exhibit E is an email that Mr. Seidenfeld sent to Isaac Lefkowitz on July 31, 2014 advising Isaac Lefkowitz that "I am sending deed out to record today."   These contemporaneous communications from and to Isaac Lefkowitz leave no doubt:  The parties always intended for the deed conveying the Property to 1526 LLC to be recorded at the time of the sale transaction in 2014.  The Debtor's assertion that the Sale Contract and the deed were to be held in escrow is pure fiction.

22.     The Debtor's version of events also simply does not make any sense.  First, the Debtor has not produced any escrow agreement, even though the deed to this very valuable Property was supposedly to be held in escrow with counsel for the opposing party.  Second, why would Bluma Lefkowitz potentially allow title to her $4 million home to pass to 1526 LLC if there were a default on a loan of only $1 million?  Lastly, if the Sale Contract and the deed were to be returned upon repayment of the Vetcare loan, why didn't Bluma Lefkowitz or Isaac Lefkowitz make demand for the return of the Sale Contract and deed in 2015 when the Debtor claims that the Vetcare loan was repaid?  No action was taken by the Lefkowitzes with respect to the deed until July 2018, three years later, when Bluma Lefkowitz illegally signed the deed transferring Property from 1526 LLC to herself.

**D.     Alexander Ashkenazi Never Executed
A "Loan Repayment Acknowledgement"**

23.     In furtherance of the Debtor's attempt to support its false premise that the funds paid for the purchase of the Property were actually loan proceeds for the Vetcare loan, the Debtor states in its Objection that Alexander Ashkenazi executed a "Loan Repayment Acknowledgment" that includes a line item for the $560,000 down payment on the purchase of the Property allegedly as part of the Vetcare loan proceeds.  *See* Objection ¶¶ 36-38.  The Debtor attached this purported acknowledgment as Exhibit D to the Objection.  This is another demonstrably false statement.

24.     The "Loan Repayment Acknowledgment" filed by the Debtor is not an "acknowledgment," and was not executed by Alexander Ashkenazi.  Alexander Ashkenazi did not prepare this document and, on its face, this document does not contain any acknowledgment given by him.  It is a document on Vetcare letterhead, signed only by Isaac Lefkowitz, containing only Isaac Lefkowitz's "acknowledgment" that he has repaid the Vetcare loan.  The fact that Isaac

Lefkowitz unilaterally included a $560,000 sum (presumably from the down payment on the purchase of the Property) as part of the Vetcare loan proceeds proves nothing.

25.    In its Objection, the Debtor states that "Sender even executed a Loan Repayment Acknowledgment, which is part of the record in the State Court Action, but that Movant—quite tellingly—failed to include in its herein Motion."  Objection ¶ 38.  1526 LLC is not aware how the omission of an irrelevant document that is not actually an "acknowledgment" of any kind is telling. What is actually telling is that the Debtor also ignored the documented acknowledgment *from Isaac Lefkowitz*, annexed as Exhibit K to the Motion, in which he confirmed receipt of $750,000 in loan proceeds and which includes the checks *made payable to Vetcare* in the aggregate amount of $750,000.  Nowhere in that acknowledgment is there a reference to the $560,000 down payment for the purchase of the Property as part of the Vetcare loan proceeds.

**E.    The Debtor And The Lefkowitzes Were
Aware Of The Rider To The Sale Contract**

26.    The Debtor states in its Objection that it "is unaware of the existence of any executed Rider to that effect and believes it was unilaterally prepared after the fact by Movant related parties and/or their counsel."  ¶ 24 fn. 2.  This statement is demonstrably false.

27.    The Rider and the Additional Rider to the Sale Contract (annexed as part of Exhibit A to the Motion) are signed by the parties, including Bluma Lefkowitz.  Moreover, Isaac Lefkowitz himself refers to the Rider in an email he sent to Alexander Ashkenazi on July 20, 2014, attaching an accounting of the sale transaction prepared by Isaac Lefkowitz.  A copy of the July 20, 2014 email from Isaac Lefkowitz to Alexander Ashkenazi is annexed hereto as Exhibit F.  The spreadsheet attached to that email that Isaac Lefkowitz prepared shows line item entries for all of the payments made in consideration for the purchase of the Property, and specifically breaks down

11

the purchase price of $4,025,000 by reference to "Contract $2,050,00" and "***Rider $2,000,000***."
*See* Exhibit F hereto (emphasis added).

28.     The contemporaneous documents show that Isaac Lefkowitz was well aware of the
Rider to the Sale Contract.  It is not credible for the Debtor to now disclaim knowledge of the
Rider.

## THE DEBTOR'S CHAPTER 11 CASE WAS FILED
## IN BAD FAITH AND SANCTIONS ARE WARRANTED

29.     Simply put, the foregoing demonstrably false statements in the Debtor's Objection
provides further proof of the Debtor's bad faith filing of this chapter 11 case.

30.     The Debtor's chapter 11 case is a clear-cut case of new debtor syndrome and should
be dismissed because the Debtor has failed to rebut the presumption of bad faith inherent in these
types of bankruptcy filings.  Moreover, the Debtor's bad faith in this case is manifest:  The Debtor
was created less than a week before it filed bankruptcy solely to receive title to the Property (for
no consideration) from Bluma Lefkowitz—***a defendant in a state court action to quiet title to the
very Property that she transferred while the action was still pending***.  The State Court had
recently denied Bluma Lefkowitz's motion for summary judgment and held in its Summary
Judgment Decision that "factual issues precluding summary judgment exist regarding the alleged
purchase as well as concerning the loan to Vetcare, such as who are 1526's actual members and
who owns the premises."  Summary Judgment Decision at 8.  Even with the State Court ruling that
the ownership of the Property was in dispute, Bluma Lefkowitz decided to sign the deed for the
Property over to the newly-formed Debtor so that the Debtor could file bankruptcy and effectively
take the Property outside the jurisdiction of the State Court.  These actions, together with the
blatantly and demonstrably false statements contained in the Objection plainly establish the

Debtor's bad faith in filing its chapter 11 case, and underscore the bad faith conduct of the Debtor, Bluma Lefkowitz, and Isaac Lefkowitz warranting sanctions.

### A.      1526 LLC Has Standing To File The Motion

31.      1526 LLC has standing to move to dismiss the Debtor's chapter 11 case. The Debtor argues that 1526 LLC does not have standing to bring the Motion because (i) 1526 LLC was dissolved, and (ii) 1526 LLC has not provided even a "shred of proof" that Rivka Ashkenazi has authority to act on behalf of 1526 LLC.

32.      The State Court has already rejected these same arguments made by Bluma Lefkowitz in the State Court Action. Bluma Lefkowitz strategically (and without authority to do so) purported to dissolve 1526 LLC shortly after 1526 LLC commenced the State Court Action. Bluma Lefkowitz then moved for summary judgment dismissing the complaint based on, among other things, the fact that 1526 LLC was dissolved and thus did not have standing to bring the action. In its Summary Judgment Decision, the State Court noted that Bluma Lefkowitz did not dispute that a dissolved corporation may still sue. *See* Summary Judgment Decision at 6, annexed as Exhibit M to the Motion. As noted above, the State Court denied Bluma Lefkowitz's motion for summary judgment dismissing the complaint, in light of the arguments raised and the evidence submitted by Rivka Ashkenazi on behalf 1526 LLC.

33.      With respect to the Debtor's assertion that 1526 LLC has failed to provide any proof that Rivka Ashkenazi has authority to act on behalf of 1526 LLC, the Debtor seemingly ignores (i) the Seidenfeld Affirmation, in which Mr. Seidenfeld attests that he created 1526 LLC for the benefit of Rivka Ashkenazi, at her request, (ii) the Articles of Organization annexed hereto as Exhibit B, showing that Mr. Seidenfeld (counsel for Rivka Ashkenazi) was the organizer and formed 1526 LLC, (iii) the draft post-closing agreement annexed as Exhibit G to the Motion, in which Isaac Lefkowitz acknowledged that Alexander Ashkenazi was the beneficial owner of 1526

LLC, and (iv) the closing documents filed with the deed (annexed hereto as <u>Exhibit G</u>) that show

Rivka Ashkenazi signing as the member of 1526 LLC, as buyer. This is not merely a "shred of

proof" that Rivka Ashkenazi has authority to act on behalf of 1526 LLC, it is persuasive evidence

that the Debtor pretends does not exist. Indeed, it is the Debtor that has baldly asserted Bluma

Lefkowitz's interest in 1526 LLC without any support, other than her own self-serving statements.[4]

34.      In any event, 1526 LLC is the plaintiff in the State Court Action that the Debtor

itself removed and sought to have transferred to this Court. 1526 LLC is the plaintiff seeking to

quiet title to the very Property that the Debtor received for no consideration from Bluma Lefkowitz

less than a week before it filed bankruptcy. Rivka Ashkenazi lives in the Property with her family.

It is difficult to imagine that 1526 LLC and Rivka Ashkenazi would not be a "party in interest"

under section 1109 of the Bankruptcy Code, entitled to be heard in this chapter 11 case. *See In re*

*Global Indus. Techs., Inc.*, 645 F.3d 201 (3d Cir. 2011) (a party in interest is one who has a

sufficient stake in a proceeding so as to require representation); *In re James Wilson Assocs.*, 965

F.2d 160, 169 (7th Cir. 1992) (a party in interest is anyone who has a legally protected interest that

could be affected by a bankruptcy proceeding).

**B.  The Debtor Has Failed To Rebut The Presumption Of**
    **Bad Faith In Its Clear Cut Case Of New Debtor Syndrome**

35.      This is a clear cut case of "new debtor syndrome" and the Debtor's chapter 11 case

should be dismissed as having been filed in bad faith. *See Squires Motel, LLC v. Gance (In re*

*Squires Motel, LLC)*, 426 B.R. 29, 35 (N.D.N.Y. 2010) ("In particular, the court is persuaded that

this is a clear-cut case of the 'new debtor syndrome,' as it involves, among other things, a dispute

between two parties that was essentially resolved in state court and that would be best served by

---

[4] Notably, in instances where the Debtor raised Bluma Lefkowitz's alleged interest in 1526 LLC, it only does so, without explanation and "upon information and belief." *See* Objection ¶ 30; Declaration of Isaac Lefkowitz Pursuant to Local Bankruptcy Rule 1007-2 [ECF No. 2] ¶ 13; Sale Motion [ECF No. 10] ¶ 17.

dismissal here."). As 1526 LLC argued in the Motion, the Debtor in this case checks every single box for the factors considered by courts in determining whether a case was filed in bad faith as a "new debtor syndrome" case. Moreover, every one of the factual findings discussed by this Court in *In re St. Stephen's 350 E. 116th St.* is present here. *See In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 165 fn.2 (Bank. S.D.N.Y. 2004) (Drain, J.) ("Moreover, the facts alleged by the Dismissal Motion described "new debtor syndrome, raising the concern that the Debtors were using the Bankruptcy Code improperly.") (citation omitted). Given the blatant case here of "new debtor syndrome," and the concerns that 1526 LLC has raised that the Debtor is using the Bankruptcy Code improperly, there is a rebuttable presumption that the Debtor's chapter 11 case was filed in bad faith.

36.     The Debtor has failed to credibly challenge that this case was filed in bad faith. The Debtor's reliance on *In re Levinsky*, 23 B.R. 210 (Bankr. E.D.N.Y. 1982), and *In re 68 West 127 Street, LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002), are unavailing as those cases are clearly distinguishable. In *In re Levinsky*, the court denied a bank's motion to dismiss a chapter 11 case filed by a partnership that received property a little more than one month before the partnership filed its bankruptcy case. In that case, the court looked at "whether any of the substantive or procedural rights of any of the creditors to assets, available prior to the transfer of the property, have been altered or eroded by the transfer and subsequent Chapter 11 filing." *In re Levinsky*, 23 B.R. at 218 (quotation and citations omitted). Similarly, in *In re 68 West 127 Street, LLC*, this Court declined to grant a bank stay relief on the basis of a bad faith filing where the debtor received property shortly before filing its bankruptcy case because, among other things, the bank was not prejudiced by the transfer of the property, and the debtor was seeking to use chapter 11 for a legitimate goal.

37.     In those cases, there was no question that the transferor was the legitimate owner of the property that was transferred to the debtor.  And in those case, the courts found that the creditor seeking dismissal or stay relief were not prejudiced by the pre-filing transfer.  Not so in this case.  Here, the Property was the subject of a pending quiet title action when it was transferred to the Debtor from the defendant in the quiet title action.  Moreover, 1526 LLC is prejudiced by the transfer of the Property.  1526 LLC has a three-year pending quiet title action and the transfer of the Property moves the property from the defendant to a non-defendant third party, thereby depriving the State Court of the ability to award title to the Property to 1526 LLC if 1526 LLC prevails in the State Court Action.  The transfer of the Property is also prejudicial to 1526 LLC because the Debtor, having received the transfer, is now rushing to sell the Property in bankruptcy, when there has not been a judicial determination of the right to ownership of the Property.  The documentary evidence overwhelming supports the conclusion that the Property was sold to 1526 LLC, and that Bluma Lefkowitz had no authority to unilaterally transfer the Property from 1526 LLC to herself, for no consideration.  Despite this, the Debtor would seek a prompt sale of the Ashkenazi family home.  That is severely prejudicial to 1526 LLC and the Ashkenazi family.

38.     Nor can the Debtor state a legitimate purpose for its chapter 11 case.  It is not a permissible chapter 11 goal to transfer title to a Property that is subject of a quiet title action so that it can be sold in a section 363 sale even though the overwhelming evidence points to beneficial ownership of the Property to the family residing at the home, which has no connection to the Debtor.

39.     Lastly, this Court *In re 68 West 127 Street, LLC* noted that "a debtor's behavior can be so egregious—especially in a two-party case … —that there may be no need to look into the possibility of a debtor's equity in the collateral or the reasonable likelihood of the debtor

confirming a chapter 11 plan in a reasonable time." *In re 68 West 127 Street, LLC*, 285 B.R. at 847. As set forth herein and in the Motion, 1526 LLC submits that the Debtor's (and the Lefkowitzs') behavior in this case is so egregious, there is no need to look beyond their subjective bad faith to merit a dismissal of the chapter 11 case.

**C.     Sanctions Against The Debtor, Bluma
          Lefkowitz And Isaac Lefkowitz Are Warranted**

40.     1526 LLC's arguments set forth in the Motion in support of sanctions against the Debtor, Bluma Lefkowitz, and Isaac Lefkowitz are made even more compelling by the Debtor's numerous demonstrably false statements contained in the Objection. If there were any doubt before the Objection was filed that the Debtor and the Lefkowitzes are abusing the bankruptcy process, that doubt was removed with the filing of the Objection. The Debtor has proven that it has no compunction about misleading the Court with materially false statements.

41.     The Court has discretion to impose sanctions based on the circumstances of each case. 1526 LLC submits that the facts in this case are sufficiently egregious that the Court should be persuaded to exercise its discretion to impose sanctions on the Debtor, Bluma Lefkowitz, and Isaac Lefkowitz for their bad faith conduct in connection with the Debtor's chapter 11 case.

## CONCLUSION

42.     For all the reasons set forth herein and in the Motion, 1526 LLC respectfully requests that this Court dismiss the Debtor's chapter 11 case, assess sanctions against the Debtor, Bluma Lefkowitz and Isaac Lefkowitz, and grant 1526 LLC such other relief as may be just and proper.

Dated:  New York, New York
August 3, 2021

RUBIN LLC

By:    _/s/ Paul A. Rubin_____
Paul A. Rubin
Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

_Counsel for 1526 52nd LLC_

# EXHIBIT A

# Department of State
## Division of Corporations

## Entity Filing History

[Return to Results]    [Return to Search]

### Entity Details

| | |
|---|---|
| **ENTITY NAME:** 1526 52ND LLC | **DOS ID:** 4604163 |
| **FOREIGN LEGAL NAME:** | **FICTITIOUS NAME:** |
| **ENTITY TYPE:** DOMESTIC LIMITED LIABILITY COMPANY | **DURATION DATE/LATEST DATE OF DISSOLUTION** |
| **SECTIONOF LAW:** 203 LLC - LIMITED LIABILITY COMPANY LAW | **ENTITY STATUS:** Inactive |
| **DATE OF INITIAL DOS FILING:** 07/09/2014 | **REASON FOR STATUS:** Voluntarily Dissolved |
| **EFFECTIVE DATE INITIAL FILING:** 07/09/2014 | **INACTIVE DATE:** 07/31/2018 |
| **FOREIGN FORMATION DATE:** | **STATEMENT STATUS:** NOT REQUIRED |
| **COUNTY:** Kings | **NEXT STATEMENT DUE DATE:** 07/31/2020 |
| **JURISDICTION:** New York, United States | **NFP CATEGORY:** |

ENTITY DISPLAY    NAME HISTORY    **FILING HISTORY**    MERGER HISTORY    ASSUMED NAME HISTORY

Search

| File Date | Cert Code | Document Type | Description/Amended Information | Page Count | File Number |
|---|---|---|---|---|---|
| 07/31/2018 | 10 | ARTICLES OF DISSOLUTION | | 2 | 180731000398 |
| 07/17/2018 | 32 | BIENNIAL STATEMENT | SERVICE OF PROCESS | 1 | 180717006026 |
| 07/09/2014 | 01 | ARTICLES OF ORGANIZATION | | 1 | 140709010289 |

# EXHIBIT B

N.Y.S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS          ALBANY, NY 12231-0001

                          ONLINE FILING RECEIPT
================================================================================

ENTITY NAME: 1526 52ND LLC

DOCUMENT TYPE: ARTICLES OF ORGANIZATION (DOM. LLC)          COUNTY: KING
================================================================================

FILED:07/09/2014 DURATION:********** CASH#:140709010289 FILE#:140709010289
                          DOS ID:4604163

        FILER:                                    EXIST DATE
        ------                                    ----------
        USACORP INC                               07/09/2014
        325 DIVISION AVE.
        SUITE 201
        BROOKLYN, NY 11211

        ADDRESS FOR PROCESS:
        --------------------
        THE LIMITED LIABILITY COMPANY
        1526 52ND ST
        BROOKLYN, NY 11219

        REGISTERED AGENT:
        -----------------



        The limited liability company is required to file a Biennial Statement with the
        Department of State every two years pursuant to Limited Liability Company Law
        Section 301. Notification that the Biennial Statement is due will only be made via
        email. Please go to www.email.ebiennial.dos.ny.gov to provide an email address to
        receive an email notification when the Biennial Statement is due.
================================================================================
SERVICE COMPANY: USACORP INC.-CS
SERVICE CODE: CS

FEE:          200.00                              PAYMENTS      200.00
              ----------                                        --------
FILING:       200.00                              CHARGE          0.00
TAX:            0.00                               DRAWDOWN      200.00
PLAIN COPY:     0.00
CERT COPY:      0.00
CERT OF EXIST:  0.00
================================================================== 1552
                          DOS-1025 (04/2007)

Authentication Number: 1407090292  To verify the authenticity of this document you
may access the Division of Corporation's Document Authentication Website at
http://ecorp.dos.ny.gov

# ACKNOWLEDGEMENT COPY

## ARTICLES OF ORGANIZATION
### OF
### 1526 52ND LLC

Under Section 203 of the Limited Liability Company Law

**FIRST:**    The name of the limited liability company is:

### 1526 52ND LLC

**SECOND:**   The county, within this state, in which the office of the limited liability company is to be located is KINGS.

**THIRD:**    The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:

THE LIMITED LIABILITY COMPANY
1526 52ND ST
BROOKLYN, NY 11219

I certify that I have read the above statements, I am authorized to sign these Articles of Organization, that the above statements are true and correct to the best of my knowledge and belief and that my signature typed below constitutes my signature.

NORMAN SEIDENFELD, ORGANIZER  (signature)
_____
NORMAN SEIDENFELD, ESQ. , ORGANIZER

**Filed by:**
USACORP INC
325 DIVISION AVE.
SUITE 201
BROOKLYN, NY 11211

## USACORP INC. (CS)
## DRAWDOWN
## CUSTOMER REF# 1552

# EXHIBIT C

## Re-edited Sentence

From: David Rothstein (drothstein@bergmanrothstein.com)

To: jacklefkowitz@gmail.com; yitzchok@vetcarehealth.com; bhy11219@yahoo.com

Date: Tuesday, November 25, 2014 11:49 PM EST

Sender, Azik,

Please review the attached Purchased Agreement. edited for the follow up correction from Sender.

See revised added sentence in Section 5(a), middle of line 14.

Thanks.

David R.


*David Rothstein, Esq.*
Bergman & Rothstein LLP
3839 Flatlands Avenue, Suite 211
Brooklyn, NY 11234
drothstein@bergmanrothstein.com
(718) 475-1447 (Direct)
(718) 475-1448 (Fax)
(718) 541-9346 (Cell)


IRS Circular 230 Disclosure: To ensure compliance with U.S. Treasury regulations we inform you that any U.S. tax advice contained in this communication (including any attachments or enclosures) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any matters addressed herein.


Notice: The information transmitted by this electronic mail (and any attachments) from Bergman & Rothstein LLP, is being sent by or on behalf of a lawyer; it is intended for the exclusive use of the addressee named above and may constitute information that is privileged or confidential or otherwise legally exempt from disclosure. If you are not the addressee or an employee or agent responsible for delivering this message to same, you are not authorized to retain, read, copy or disseminate this electronic mail (or any attachments) or any part thereof. If you have received this electronic mail (and any attachments) in error, please reply to this e-mail and send written confirmation that same has been deleted from your system. Thank you.


   VetCare - Purchase Agreement - Edited November 25, 2014 II.doc
73.5kB

# VETCARE HEALTH, INC.
## LOAN AND STOCK AND WARRANT PURCHASE AGREEMENT

This **Loan and Stock and Warrant Purchase Agreement** ("Agreement") is made as of this __ day of September, 2014, by and among **VetCare Health, Inc.**, a New York corporation (the "Company"), **VetCare Health Plus, LLC** ("Purchaser") and **Jack Lefkowitz** ("Lefkowitz").

**In consideration** of the mutual promises and agreements set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. Loan.

(a)   Subject to the terms and conditions set forth herein, the Purchaser will make loans (collectively, the "Loan") to the Company, in such amounts as the Company may request on or before December 30, 2015 (the "Expiration Date"). The aggregate principal amount of the Loans shall not exceed One Million ($1,000,000) Dollars (the "Maximum Loan Amount").

(b)   The Loan shall be evidenced by a Convertible Promissory Note (the "Note") in the form attached hereto as Exhibit A.

(c)   The Company shall repay the Loan in full by the date set forth in the Note (the "Maturity Date"). The Company may prepay, at any time and from time to time, without penalty or premium, in cash, the whole or any portion of the Loan. The Note shall be convertible into shares of the Company's Series A Preferred Stock (as defined below) under the circumstances and upon the terms and conditions set forth in the Note.

(d)   In the event that the Note is converted into shares of the Company's Series A Preferred Stock, the parties shall take such steps as may be necessary to ensure that distributions, if any, shall be made in accordance with the following order, (i) First an amount equal to the principle amount of the Note converted into Series A Preferred Stock are first made to the Purchaser, (ii) Second, an amount equal to One Million Dollars shall be distributed to Lefkowitz and (iii) Third, thereafter distributions shall be made to the shareholders of the Company based on their respective equity interest, without reduction or adjustment for the priority distributions made to the Purchaser and Lefkowitz in accordance with the provisions in this sub-Section.

2. Sale of Shares and Warrant.

(a)   The Company shall, promptly following the execution of this Agreement, issue, sell and deliver to the Purchaser eleven (11) shares (the "Shares") of Series A Preferred Stock of the Company, containing the terms set out in the Amended and Restated Certificate of Incorporation annexed hereto as Exhibit B for a purchase price of One Dollar ($1.00) per share.

(b)   The Company shall issue, sell and deliver to the Purchaser a warrant (the "Warrant") in the form annexed hereto as Exhibit C.

(c)   At the Company's request, the Purchaser may, but shall not be obligated to, provide additional funding to the Company pursuant to terms the parties hereto may mutually agree to, provided that for purposes of valuing any equity in the Company to be issued in connection therewith, the parties agree that the Company shall be valued at less than Ten Million ($10,000,000) Dollars.

3.     **Representations and Warranties of the Company and Lefkowitz.**  The Company and Lefkowitz represent and warrant to the Purchaser as follows:

(a)   The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of New York. The Company has full corporate power and authority to own its property and conduct its business as now conducted, to enter into and perform this Agreement and the Note and, upon the filing of the Amended and Restated Certificate of Incorporation, will have the full corporate power and authority to issue, sell and deliver the Shares and the Warrant.

(b)   The issuance, sale and delivery of the Shares and the Warrant have been duly authorized by all necessary corporate action on the part of the Company. The Shares, the shares issuable upon exercise of the Warrant (the "Warrant Shares") and the shares issuable upon conversion of the Note (the "Note Shares"), when issued, will be duly and validly issued, fully paid and nonassessable and free from any claims, liens or encumbrances.

(c)   The execution, delivery and performance by the Company of this Agreement, the Note and the Warrant have been duly authorized by all necessary corporate action on the part of the Company. This Agreement, the Note and the Warrant constitute the legal, valid and binding obligations of the Company enforceable against the Company in accordance with their respective terms, subject to applicable bankruptcy, reorganization, insolvency, fraudulent conveyance and other similar laws generally affecting the rights and remedies of creditors and to the exercise of judicial discretion in accordance with general equitable principles.

(d)   The execution and delivery of, and performance of the transactions contemplated by this Agreement, the Note and the Warrant, will not (i) violate any material provision of any law or regulation applicable to the Company, (ii) conflict with or result in any breach of any of the terms, conditions or provisions of, or constitute a default under, any material indenture, lease, mortgage, agreement or other instrument to which the Company is a party or by which it or any of its properties is bound, or any decree, judgment or order known to the Company which is applicable to the Company or its properties, or (iii) result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the assets or properties of the Company.

2

(e)     No consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, any governmental authority is required on the part of the Company in connection with the execution, delivery and performance of this Agreement, the Note and the Warrant or the offer, issuance and sale of the Shares, the Warrant Shares and the Note Shares, except such filings as shall have been made prior to and shall be effective on and as of the date hereof or which this Agreement explicitly obligates the Company to take promptly following the execution of this Agreement.

(f)     As of the date of this Agreement the authorized and issued capital stock of the Company consists solely of common stock.  No other shares of capital stock have been authorized or issued.  There are no accrued but unpaid dividends of any kind or nature on the Company's capital stock.

4.     **Agreements and Covenants.** Each of the Company and Lefkowitz covenant and agree as follows:

(a)  To cause the Amended and Restated Certificate of Incorporation to be filed with the Secretary of State of the State of New York promptly following the execution of this Agreement.

(b)  So long as the Note is outstanding, (i) the Company will not declare any dividends on its capital stock, repurchase or redeem any of its capital stock or otherwise make any distributions to its stockholders, and (ii) any additional capital raised by the Company shall be used first to repay amounts outstanding under the Note.

(c)  So long as any of the Shares, the Note, the Warrant, the Warrant Shares or the Note Shares are outstanding the Company will not without notice (i) issue any equity interests in the Company other than common stock, (ii) issue any options, warrants or other instruments convertible into any equity interests of the Company other than common stock or (iii) take any action, directly or indirectly or permit any action to be taken, solely or primarily for the purpose of increasing the value of any class of stock of the Company or any of its subsidiaries if the effect of such action is reasonably likely to reduce the value, security, rights or preferences of the Note or the Shares, Note Shares or Warrant Shares.

(d)  So long as (i) any of the Shares, the Note, the Warrant, the Warrant Shares or the Note Shares are outstanding and (ii) the Company has not issued to one or more venture capital investors new equity representing twenty five percent (25%) or more of the Company's capital stock, on a fully diluted basis, in an arms' length transaction, none of the following actions will be taken without the prior written consent of the Purchaser, which consent may be withheld for any or no reason:

     i.     Any amendment, alteration or repeal of any of the provisions of the Certificate of Incorporation, or the By-laws of the Company or any subsidiary of the Company;

3

ii.    The authorization or creation by the Company or any subsidiary of the Company of, or the increase in the number of authorized shares of, any stock of any class, or any security convertible into stock of any class, or the authorization or creation of any new class of preferred stock (or any action which would result in another series of preferred stock);

iii.   The liquidation, dissolution or winding-up of the Company or any merger or consolidation of the Company or any of its subsidiaries with or into another entity or the sale, conveyance or other disposition of all, or substantially all, the assets, property or business of the Company;

iv.    The reorganization, recapitalization, sale, conveyance, or other disposition of or encumbrance of all or substantially all of the property or business of the Company or any of its subsidiaries or the merger into or consolidation with any other corporation or effect any transaction or series of related transactions in which, in any case, more than ten (10%) percent of the voting power of the Company is disposed of;

v.     The entering into by the Company or any of its subsidiaries into an indebtedness for borrowed money, except in the ordinary course of business, but in any case not for amounts greater than Ten Thousand ($10,000) Dollars;

vi.    The granting or making by the Company or any of its subsidiaries of any mortgage or pledge, or the assumption or suffering to exist on, or the imposition on, any of its material properties or assets, any lien, charge, defect in title, or encumbrance of any kind, except liens for taxes not currently due;

vii.   The loan or advance of money, credit (other than by the creation of accounts receivable in the ordinary course of business) or property by the Company or any of its subsidiaries;

viii.  The hiring of any officer of the Company;

ix.    The making of or commitment to make, by the Company or any of its subsidiaries, any capital expenditures, other than as specifically set forth in the budget reviewed by the Purchaser;

x.     The approval of any transaction with an affiliate or related person of Lefkowitz for an amount greater than Ten Thousand ($10,000) Dollars;

xi.    Any increase in the compensation paid to Lefkowitz, any officer of the Company;

xii.   The entering into by the Company or any of its subsidiaries of any material agreement or amendment or termination of any existing material agreement except in the ordinary course of business.

(e)   So long as any of the Shares, the Note, the Warrant, the Warrant Shares or the Note Shares are outstanding the Purchaser shall have the right and full access, during normal business hours, to inspect and make copies of the Company's books and records.

(f)   In the event Purchaser shall invest or lend One Million Dollars ($1,000,000) or more in the Company other than the amounts to be advanced pursuant to the Note, the Purchaser shall be

4

permitted to designate one person to serve on the Company's board of directors. Such appointment shall be in addition to the right of the holders of the Series A Preferred Stock to elect one director pursuant to the Amended and Restated Certificate of Incorporation of the Company. The Company shall not increase the size of the board of directors to more than five (5) directors without the Purchaser's prior written approval.

(g)   Lefkowitz shall vote all of his interests in the Company and shall take all other necessary or desirable actions within his control, and the Company shall take all necessary and desirable actions, to effectuate the terms of this Agreement.

5.   **Right of First Refusal**.

(a)   In the event the Company seeks to raise capital by issuing debt or equity other than in an arms' length transaction with an institutional venture capital investor, Purchaser or Purchaser's designee shall have the right to purchase additional shares of Common Stock for an amount equal to or up to the Maximum Loan Amount of the Note plus Two Million Dollars ($2,000,000). The purchase price of the Common Stock shall be determined so that following such transaction the Purchaser will own Common Stock that, together with the Series A Preferred Stock acquired by the Purchaser pursuant to this Agreement, represents: i. 35.33% of the voting, dividend and liquidation preferences of all capital stock in the Company (pro-rated if the Purchaser elects to exercise this right but for less than the full purchase price permitted hereby) if the Warrant provided for in this Agreement has been exercised upon by the Purchaser; or ii. 33.33% of the voting, dividend and liquidation preferences of all capital stock in the Company (pro-rated if the Purchaser elects to exercise this right but for less than the full purchase price permitted hereby) if the Warrant provided for in this Agreement has not been exercised upon by the Purchaser (the "Common Equity Right of First Refusal"). The Common Equity Right of First Refusal shall be affective only through the first two capital raises or a cumulative total capital raise of Five Million ($5,000,000) Dollars, whichever occurs last. The Company shall provide no less than thirty (30) days' prior written notice (a "Sale Notice") to Purchaser of any such proposed issuance. The Sale Notice shall identify (i) the Company's bona fide intention to issue securities, (ii) the name and address of each proposed purchaser, and (iii) the number and amount of securities to be offered. The Purchaser may exercise this Common Equity Right of First Refusal, in whole or in part, by providing written notice to the Company of such election within 20 days of receipt of the Sale Notice. If the Purchaser exercises his right of first refusal hereunder, the Purchaser may pay for some or all of its purchase by cancelling an equivalent amount of the amount then due pursuant to the Note.

(b)   In the event the Company seeks to raise capital by issuing debt or equity other than in an arms' length transaction with an institutional venture capital investor, Purchaser or Purchaser's designee(s) shall have a right of first refusal to participate in such transaction at the purchase price and on the terms as the Company proposes to issue such interests to parties other than the Purchaser (the "General Right of First Refusal"). The Company shall provide a Sale Notice

no less than thirty (30) days' prior to any such proposed issuance. The Purchaser may exercise this General Right of First Refusal, in whole or in part, by providing written notice to the Company of such election within 20 days of receipt of the Sale Notice. If the Purchaser exercises his right of first refusal hereunder, the Purchaser may pay for some or all of its purchase by cancelling an equivalent amount of the amount then due pursuant to the Note.

(c)   If the Purchaser fails to exercise any of the rights of first refusal set out in this Section 5, the Company shall be permitted to raise capital on terms no less favorable to the Company than as set out in the Sale Notice until 180 days following the date of such Sale Notice.

6.      **Miscellaneous.** This Agreement, the Warrant and the Note constitute the entire agreement among the parties with respect to the subject matter hereof, provided that the parties acknowledge and agree that the Memorandum of Understanding executed between the Company and the Purchaser shall survive to the extent it relates to matters other than the specific transactions contemplated hereby. This Agreement may not be modified or amended except by an instrument in writing signed by all the parties hereto. This Agreement may be executed in two or more counterparts and via facsimile, email or other electronic means, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its provisions regarding conflicts of law.

**IN WITNESS WHEREOF**, the undersigned have executed this Loan and Stock and Warrant Purchase Agreement as of the date first set out above.

VETCARE HEALTH, INC.                         VETCARE HEALTH PLUS, LLC:

By: _____                   _____
    **Yitzchok Lefkowitz**, its                   Sender Ashkanazi, its
    President & Secretary                        Managing Member

_____
**Yitzchok Lefkowitz**, Individually

STATE OF NEW YORK
COUNTY OF KINGS

On the   day of November, in the year 2014, before me, the undersigned, **Yitzchok Lefkowitz**, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person or entity upon behalf of which the individual acted, executed the instrument.

Sworn to before me this   , day of November, 2014

6

Notary Public

### CERTIFICATE OF AMENDMENT
### OF THE
### CERTIFICATE OF INCORPORATION
### OF
### VETCARE HEALTH, INC.

Under Section 805 of the Business
Corporation Law of the State of New York

**The undersigned**, being the Chief Executive Officer of VETCARE HEALTH, INC. (the "Corporation"), hereby certifies as follows:

1. The name of the Corporation is VetCare Health, Inc.

2. The Certificate of Incorporation of the Corporation was filed by the Department of State of the State on December 17, 2013.

3. The text of the Certificate of Incorporation is hereby amended to authorize and set forth the terms of the Corporation's Series A Preferred Stock.

4. In order to effect the change set forth in paragraph 3 above, the text of paragraph Fourth of the Certificate of Incorporation of the Corporation is hereby amended to read in its entirety as follows:

The total number and value of shares of stock which the corporation shall have the authority to issue is: 200 shares of common stock with no par value and 36 shares of Series A Preferred Stock (the "Series A Preferred") with no par value. The rights, preferences, privileges, restrictions and other matters relating to the Series A Preferred are as follows:

1. DIVIDEND RIGHTS.

(a) Holders of Series A Preferred  shall be entitled to receive for each one share of Series A Preferred dividends, when and if declared by the corporation, equal to 1% of the aggregate dividends paid by the corporation, inclusive of the dividends payable to the Series A Preferred pursuant to this provision (the "Series A Preferred Dividend").  The Series A Preferred Dividend shall be payable at the same time and under the same terms as those payable to any other shares of the corporation's stock.

2. RANK.

The Series A Preferred shall, with respect to rights upon any liquidation of the corporation shall rank on parity with the most senior outstanding class of the corporation's stock other than the Series A Preferred.

3. VOTING RIGHTS.

(a) General Rights:  Each share of Series A Preferred shall have voting rights equal to one percent of the aggregate votes authorized to vote on any matter submitted to shareholders of the corporation.

(b) Separate Vote of Series A Preferred:  For so long as any shares of Series A Preferred remain outstanding, in addition to any other vote or consent required herein or by law, the vote or written consent of the holders of at least a majority of the outstanding Series A Preferred shall be necessary for effecting or validating the following actions (whether by merger, recapitalization or otherwise):

i.   Any amendment, alteration, or repeal of any provision of the Certificate of Incorporation of the Corporation, that alters or changes the powers, preferences, or other special rights, privileges or restrictions of the Series A Preferred;

ii.  Alter or change adversely the powers, preferences, or other special rights, privileges or restrictions of the Series A Preferred;

iii. Any authorization or any designation, whether by reclassification or otherwise, of any new class or series of stock or any other securities convertible into equity securities of the corporation or any increase in the authorized or designated number of any class or series; or

iv.  Any merger, acquisition, sale of assets or consolidation that requires shareholder approval.

(c) Election of Directors:  In any election of directors, the Series A Preferred shall have; (i) the voting rights set out above; and (ii) the right to vote as a class to elect or remove one director (the "Series A Director").

(d)  Negative Covenants: As long as any Series A Preferred shares are outstanding, unless the holders of more than 50% of the outstanding Series A Preferred shares provide their written consent, the corporation shall not, directly or indirectly (including through a subsidiary), repay, repurchase or offer

to repay, repurchase or otherwise acquire shares of its capital stock other than the Series A Preferred or enter into any agreement with respect to the foregoing.

4. LIQUIDATION RIGHTS.

(a) Series A Preferred Liquidation Preference: In the event the corporation is party to an Acquisition or Asset Transfer (as hereinafter defined) or upon any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary (any such Acquisition, Asset Transfer, liquidation, dissolution or winding up, a "Liquidation Event"), each holder of Series A Preferred shall be paid, for each share of Series A Preferred one percent of the proceeds of such Acquisition or Asset Transfer or the assets of the corporation legally available for distribution.

(b) Certain Definitions: For purposes of this Section 4: (i) "Acquisition" shall mean (A) any consolidation or merger of the corporation with or into any other corporation or other entity or person, or any other corporate reorganization, other than any such consolidation, merger or reorganization in which the stockholders of the corporation immediately prior to such consolidation, merger or reorganization, continue to hold at least fifty percent (50%) of the voting power of the surviving entity in substantially the same proportions among the stockholders of the corporation (or, if the surviving entity is a wholly owned subsidiary, its parent) immediately after such consolidation, merger or reorganization; or (B) any transaction or series of related transactions (including but not limited to any tender offer for capital stock of the corporation or any sale of capital stock of the corporation but excluding any tender offer or investment by a holder of Series A Preferred) in which in excess of fifty percent (50%) of the corporation's voting power is transferred; and (ii) "Asset Transfer" shall mean a sale, lease, exclusive license or other disposition of all or substantially all of the assets of the corporation.

(c) Non-Cash Consideration: In any Acquisition or Asset Transfer, if the consideration to be received is securities of a corporation or other property other than cash, its value will be deemed its fair market value as determined in good faith by the board of directors on the date such determination is made, with the approval of the Series A Director.

5. This amendment to the Certificate of Incorporation was authorized by the unanimous written consent of the shareholders and board of directors of the corporation.

3

**IN WITNESS WHEREOF**, I hereunto sign my name and affirm that the statements made herein are true under the penalties of perjury, this _____ day of _____, 2014.


_____

**Yitzchok Lefkowitz,**
President & Secretary

4

CERTIFICATE OF AMENDMENT
OF THE
CERTIFICATE OF INCORPORATION
OF
VETCARE HEALTH, INC.

Under Section 805 of the Business
Corporation Law of the State of New York

**The undersigned**, being the Chief Executive Officer of VETCARE HEALTH, INC. (the "Corporation"), hereby certifies as follows:

1. The name of the Corporation is VetCare Health, Inc.

2. The Certificate of Incorporation of the Corporation was filed by the Department of State of the State on December 17, 2013.

3. The text of the Certificate of Incorporation is hereby amended to authorize and set forth the terms of the Corporation's Series A Preferred Stock.

4. In order to effect the change set forth in paragraph 3 above, the text of paragraph Fourth of the Certificate of Incorporation of the Corporation is hereby amended to read in its entirety as follows:

The total number and value of shares of stock which the corporation shall have the authority to issue is: 200 shares of common stock with no par value and 36 shares of Series A Preferred Stock (the "Series A Preferred") with no par value. The rights, preferences, privileges, restrictions and other matters relating to the Series A Preferred are as follows:

1.  DIVIDEND RIGHTS.

(a) Holders of Series A Preferred  shall be entitled to receive for each one share of Series A Preferred dividends, when and if declared by the corporation, equal to 1% of the aggregate dividends paid by the corporation, inclusive of the dividends payable to the Series A Preferred pursuant to this provision (the "Series A Preferred Dividend"). The Series A Preferred Dividend shall be payable at the same time and under the same terms as those payable to any other shares of the corporation's stock.

1

2. RANK.

The Series A Preferred shall, with respect to rights upon any liquidation of the corporation shall rank on parity with the most senior outstanding class of the corporation's stock other than the Series A Preferred.

3. VOTING RIGHTS.

(a) General Rights: Each share of Series A Preferred shall have voting rights equal to one percent of the aggregate votes authorized to vote on any matter submitted to shareholders of the corporation.

(b) Separate Vote of Series A Preferred: For so long as any shares of Series A Preferred remain outstanding, in addition to any other vote or consent required herein or by law, the vote or written consent of the holders of at least a majority of the outstanding Series A Preferred shall be necessary for effecting or validating the following actions (whether by merger, recapitalization or otherwise):

i.   Any amendment, alteration, or repeal of any provision of the Certificate of Incorporation of the Corporation, that alters or changes the powers, preferences, or other special rights, privileges or restrictions of the Series A Preferred;

ii.  Alter or change adversely the powers, preferences, or other special rights, privileges or restrictions of the Series A Preferred;

iii. Any authorization or any designation, whether by reclassification or otherwise, of any new class or series of stock or any other securities convertible into equity securities of the corporation or any increase in the authorized or designated number of any class or series; or

iv.  Any merger, acquisition, sale of assets or consolidation that requires shareholder approval.

(c) Election of Directors: In any election of directors, the Series A Preferred shall have; (i) the voting rights set out above; and (ii) the right to vote as a class to elect or remove one director (the "Series A Director").

(d) Negative Covenants: As long as any Series A Preferred shares are outstanding, unless the holders of more than 50% of the outstanding Series A Preferred shares provide their written consent, the corporation shall not, directly or indirectly (including through a subsidiary), repay, repurchase or offer

2

to repay, repurchase or otherwise acquire shares of its capital stock other than the Series A Preferred or enter into any agreement with respect to the foregoing.

4. LIQUIDATION RIGHTS.

(a) Series A Preferred Liquidation Preference: In the event the corporation is party to an Acquisition or Asset Transfer (as hereinafter defined) or upon any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary (any such Acquisition, Asset Transfer, liquidation, dissolution or winding up, a "Liquidation Event"), each holder of Series A Preferred shall be paid, for each share of Series A Preferred one percent of the proceeds of such Acquisition or Asset Transfer or the assets of the corporation legally available for distribution.

(b) Certain Definitions: For purposes of this Section 4: (i) "Acquisition" shall mean (A) any consolidation or merger of the corporation with or into any other corporation or other entity or person, or any other corporate reorganization, other than any such consolidation, merger or reorganization in which the stockholders of the corporation immediately prior to such consolidation, merger or reorganization, continue to hold at least fifty percent (50%) of the voting power of the surviving entity in substantially the same proportions among the stockholders of the corporation (or, if the surviving entity is a wholly owned subsidiary, its parent) immediately after such consolidation, merger or reorganization; or (B) any transaction or series of related transactions (including but not limited to any tender offer for capital stock of the corporation or any sale of capital stock of the corporation but excluding any tender offer or investment by a holder of Series A Preferred) in which in excess of fifty percent (50%) of the corporation's voting power is transferred; and (ii) "Asset Transfer" shall mean a sale, lease, exclusive license or other disposition of all or substantially all of the assets of the corporation.

(c) Non-Cash Consideration: In any Acquisition or Asset Transfer, if the consideration to be received is securities of a corporation or other property other than cash, its value will be deemed its fair market value as determined in good faith by the board of directors on the date such determination is made, with the approval of the Series A Director.

5. This amendment to the Certificate of Incorporation was authorized by the unanimous written consent of the shareholders and board of directors of the corporation.

**IN WITNESS WHEREOF**, I hereunto sign my name and affirm that the statements made herein are true under the penalties of perjury, this _____ day of _____, 2014.


_____

**Yitzchok Lefkowitz,**
President & Secretary

# EXHIBIT D

---------- Forwarded message ---------
From: **Jack Lefkowitz** <jacklefkowitz@gmail.com>
Date: Mon, Jul 14, 2014 at 5:49 PM
Subject: RE:
To: Norman Seidenfeld <normseid@gmail.com>

Please revise it and have it signed before filing the deed.

Jack Lefkowitz

*646-623-5200*

**From:** Norman Seidenfeld [mailto:normseid@gmail.com]
**Sent:** July 14, 2014 5:45 PM
**To:** Jack Lefkowitz
**Subject:** Re:

I had prepared a document which alos included the $500,000 that he owed you. now that he gave it to you directly, i need to limit its provisions

On Mon, Jul 14, 2014 at 5:19 PM, Jack Lefkowitz <jacklefkowitz@gmail.com> wrote:

Did you prepare the mortgage payment undertaking?

Jack Lefkowitz

1

*646-623-5200*


**From:** Norman Seidenfeld [mailto:normseid@gmail.com]
**Sent:** July 14, 2014 4:55 PM
**To:** Jacklefkowitz
**Subject:** RE:


Who is she? And what about the other?
pkwase let her come at 6:30

On Jul 14, 2014 4:49 PM, "Jack Lefkowitz" <jacklefkowitz@gmail.com> wrote:

Can she come in an hour?


Jack Lefkowitz

*646-623-5200*


**From:** Norman Seidenfeld [mailto:normseid@gmail.com]
**Sent:** July 14, 2014 9:55 AM
**To:** Jack Lefkowitz
**Subject:** Re:


here are signature pages. when will you get them signed?


On Sun, Jul 13, 2014 at 8:20 AM, Jack Lefkowitz <jacklefkowitz@gmail.com> wrote:

Or get the docs to me and I will collect the signatures


On Saturday, July 12, 2014, Norman Seidenfeld <normseid@gmail.com> wrote:

I will not be able to make it tomorrow. When are the ladies available during the week in the country

# EXHIBIT E

---------- Forwarded message ---------
From: **Norman Seidenfeld** <normseid@gmail.com>
Date: Thu, Jul 31, 2014 at 8:30 AM
Subject: Re: 1526 post closing agreement ver 2 doc
To: Jacklefkowitz <jacklefkowitz@gmail.com>


I am sending deed out to record today.

On Jul 28, 2014 9:57 PM, "Jack Lefkowitz" <jacklefkowitz@gmail.com> wrote:
 The signed docs where dropped off at your 12th ave office

 On Friday, July 25, 2014, Jack Lefkowitz <jacklefkowitz@gmail.com> wrote:
## Greenbaum is in california will be back on monday

 On Thu, Jul 24, 2014 at 7:20 PM, Norman Seidenfeld <normseid@gmail.com> wrote:
  THANKS


 On Thu, Jul 24, 2014 at 7:17 PM, Jack Lefkowitz <jacklefkowitz@gmail.com> wrote:
  Tomorrow I will collect it


 On Thursday, July 24, 2014, Norman Seidenfeld <normseid@gmail.com> wrote:
  I REALLY NEED THOSE AFFIDAVITS SIGNED!


 On Wed, Jul 23, 2014 at 2:04 PM, Norman Seidenfeld <normseid@gmail.com> wrote:
  are you getting signed the papers I sent you from the title company?


 On Wed, Jul 23, 2014 at 1:17 PM, Jack Lefkowitz <jacklefkowitz@gmail.com> wrote:

# EXHIBIT F

FILED: KINGS COUNTY CLERK 12/18/2020 11:45 AM
NYSCEF DOC. NO. 149

INDEX NO. 515379/2018
RECEIVED NYSCEF: 12/18/2020

21-22397-rdd    Doc 30    Filed 08/03/21    Entered 08/03/21 18:28:23    Main Document
Pg 47 of 61

1526 Cheshbon

From: Jack Lefkowitz (jacklefkowitz@gmail.com)

To:     bhy11219@yahoo.com

Date:  Sunday, July 20, 2014 05:17 PM EDT

1526 Cheshbon.xlsx
10.2kB

FILED: KINGS COUNTY CLERK 12/18/2020 11:45 AM

NYSCEF DOC. NO. 149

INDEX NO. 515379/2018

RECEIVED NYSCEF: 12/18/2020

21-22397-rdd    Doc 30    Filed 08/03/21    Entered 08/03/21 18:28:23    Main Document
Pg 48 of 61

| CK # | Amount | |
|---|---|---|
| 4390 | $ 240,000 | |
| 4391 | $ 30,000 | |
| 4392 | $ 21,000 | |
| 4393 | $ 55,000 | |
| 4394 | $ 51,000 | |
| 4395 | $ 45,000 | |
| 4396 | $ 8,000 | |
| 4397 | $ 110,000 | |
| 4463 | $ 340,000 | |
| 4464 | $ 100,000 | |
| 2481 | $ 45,000 | |
| 2482 | $ 30,000 | |
| 2483 | $ 84,512 | |
| 2484 | $ 150,000 | |
| 2485 | $ 100,000 | |
| 2486 | $ 25,000 | |
| wire | $ 1,099,451 | |
| Mortgage | $ 1,469,477 | Including the July Payment |
| wire | $ 21,500 | |
| Total | $ 4,024,940 | |
| | | |
| Contarct | $ 2,025,000 | |
| Rider | $ 2,000,000 | |
| Total | $ 4,025,000 | |

# EXHIBIT G

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2014080700742001001E9C54

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 5 |
|---|---|

| Document ID: **2014080700742001** | Document Date: 08-01-2014 | Preparation Date: 08-07-2014 |
|---|---|---|

Document Type: DEED
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| INFINITY LAND SERVICES LLC IL6676 AS AGENT FOR FIRST AMERICAN TITLE INSURANCE 974 EAST 27TH STREET BROOKLYN, NY 11210 718-338-4200 SHEERA@ILSTITLE.COM | 1526 52ND LLC 1526 52ND STREET BROOKLYN, NY 11219 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5471 | 16 | Entire Lot | 1526 52ND STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____ Year_____ Reel____ Page_____ or File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| TOVA GREENBAUM 1526 52ND STREET BROOKLYN, NY 11219 | 1526 52ND LLC 1526 52ND STREET BROOKLYN, NY 11219 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 7,982.30 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $2,242.00 · $20,250.00 $ | 22,492.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 52.00 | |
| Affidavit Fee: | S | 0.00 | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed      08-14-2014 16:29
City Register File No.(CRFN):
**2014000272253**

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2014080700742001001C9ED4

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 5 |
|---|---|

| Document ID: 2014080700742001 | Document Date: 08-01-2014 | Preparation Date: 08-07-2014 |
|---|---|---|
| Document Type: DEED | | |

---

**PARTIES**

**GRANTOR/SELLER:**
BLUMA LEFKOWTIZ
1526 52ND STREET
BROOKLYN, NY 11219

**GRANTOR/SELLER:**
BLUMA LEFKOWITZ
1526 52ND STREET
BROOKLYN, NY 11219

DEED

THIS INDENTURE, made, *as of* the ~~XX~~ 1st Day of ~~July,~~ August, 2014 Ⓡ

BETWEEN        *altta Bluma Lefkowitz* Ⓡ

BLUMA LEFKOWITZ, and TOVA GREENBAUM, both of 1526 52nd Street,
Brooklyn, New York 11219
party of the first part, and

1526 52nd LLC, a New York limited liability copmany iwth offices at 1526 52nd
Street, Brooklyn, New York 11219
party of the second part,

WITNESSETH, that the party of the first part, inconsideration
of ten dollars and other valuable consideration paid by the party
of the second part, does hereby grant and release to the party of
the second part, the heirs or successors and assigns of the party
of the second part forever.

ALL that certain plot piece or parcel of land, with the buildings
and improvements thereon erected, situate, lying and being in the

Borough of Brooklyn, County of Kings, City and State of New York,
bounded and described as annexed hereto.

Said premises being known as 1526 52nd Street, Brooklyn, New York
(Block 5471; Lot 16)

*Being and intended to be the same premises conveyed
to the grantor in deed recorded in CRFN 2007000601795.*

TOGETHER with all right, title and interest, if any, of the party of the first part, in and to any streets and roads
abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances and all the
estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein
granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby
the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the
first part will receive the consideration for this conveyance and will hold the right to receive such consider-
ation as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply
the same first to the payment of the cost of the improvement before using any part of the total of the same for
any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above
written.

IN PRESENCE OF:

BLUMA LEFKOWITZ
*altta Bluma Lefkowitz*

TOVA GREENBAUM

**I N F I N I T Y**          **Infinity Land Services LLC** as agent for

First American Title Insurance Company

Title No: IL6676

# Schedule A (Legal Description)

**ALL** that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

**BEGINNING** at a point on the southwesterly side of 52nd Street distant 190 feet southeasterly from the corner formed by the intersection of the southwesterly side of 52nd Street with the southeasterly side of 15th Avenue;

**RUNNING THENCE** southwesterly parallel with the southeasterly side of 15th Avenue, 100 feet 2 inches;

**THENCE** southeasterly parallel with the southwesterly side of 52nd Street, 22 feet 3 inches;

**THENCE** northeasterly again parallel with southeasterly side of 15th Avenue and part of the distance through a party wall, 100 feet 2 inches to the southwesterly side of 52nd Street;

**THENCE** northwesterly, along the southwesterly side of 52nd Street, 22 feet 3 inches to the point or place of **BEGINNING**

FOR INFORMATIONAL PURPOSES ONLY: 1526 52nd Street, Brooklyn, NY a/k/a Block 5471 Lot 16 on the KINGS County Tax Map.

**For conveyancing only:**
**TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.**

Acknowledgement taken in New York State

State of New York, County of _K )2l_ , ss:

On the 2 day of JV L Y , in the year 2019 , before me,
the undersigned, personally appeared
_BLVMA LEFKOWITZ_     _K TOVA    ḤRARA BRIR_
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
a/k/a     (are) subscribed to the within instrument and acknowledged to
~~Bluma Lefkovch~~     me that he/she/they executed the same in his/her/their
Bluma Lejkowtiz     capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s) or the person upon behalf of which
the individual(s) acted, executed the instrument.

NORMAN SEIDENFELD
Notary Public, State of New York
No. 02SE4961228
Qualified in Kings County
Commission Expires January 29, 20___

---

Acknowledgement by Subscribing Witness taken in New
York State

State of New York, County of _____ , ss:

On the      day of      , in the year      , before me,
the undersigned, personally appeared

the subscribing witness to the foregoing instrument, with whom
I am personally acquainted, who being by me duly sworn, did
depose and say, that he/she/they reside(s) in

that he/she/they know(s)
to be the individual described in and who executed the
foregoing instrument; that said subscribing witness was
present and saw said
execute the same; and that said witness at the same time
subscribed his/her/their name(s) as a witness thereto.

Title No.: _____

TO

---

Distributed by
**Chicago Title Insurance Company**

---

Acknowledgement taken in New York State

State of New York, County of _____ , ss:

On the      day of      , in the year      , before me,
the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s) or the person upon behalf of which
the individual(s) acted, executed the instrument.

---

Acknowledgement taken outside New York State

* State of _____ , County of _____ , ss:
* (or insert District of Columbia, Territory, Possession or
Foreign Country)

On the      day of      , in the year      , before me,
the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), that by his/her/their signature(s) on the
instrument, the individual(s) or the person upon behalf of which
the individual(s) acted, executed the instrument, and that such
individual made such appearance before the undersigned in the

(add the city or political subdivision and the state or country or
other place the acknowledgement was taken).

SECTION

BLOCK

LOT

COUNTY OR TOWN

RETURN BY MAIL TO:

1526 52nd LLC
Brooklyn, 1526, 52nd Street
Brooklyn, NY   Zip No. 11219

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2014080700742001001S52D5

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2014080700742001**      Document Date: 08-01-2014      Preparation Date: 08-07-2014
Document Type: DEED

**ASSOCIATED TAX FORM ID:**   2014070300184

**SUPPORTING DOCUMENTS SUBMITTED:**

|  | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 4 |
| SMOKE DETECTOR AFFIDAVIT | 1 |



**The City of New York**
**Department of Environmental Protection**
**Bureau of Customer Services**
59-17 Junction Boulevard
Flushing, NY  11373-5108

# Customer Registration Form for Water and Sewer Billing

## Property and Owner Information:

(1)  Property receiving service: BOROUGH:  BROOKLYN          BLOCK: 5471          LOT:  16

(2)  Property Address: 1526 52ND  STREET, BROOKLYN, NY 11219

(3)  Owner's Name:      1526 52ND LLC

Additional Name:

## Affirmation:

  Your water & sewer bills will be sent to the property address shown above.

## Customer Billing Information:

**Please Note:**

A.  Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

B.  Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address**. DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

## Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:  *1526 52nd LLC*

Signature: _____      *7/23/14*  Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable:  *RIVKA ACHIONZI, MANAGER*

BCS-7CRF-ACRIS  REV. 8/08

2

201407030018410l

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**

FOR CITY USE ONLY
C1. County Code _____    C2. Date Deed Recorded ___ / ___ / ___ (Month / Day / Year)
C3. Book _____    OR    C4. Page _____
C5. CRFN

**PROPERTY INFORMATION**

1. Property Location: 1526 | 52ND STREET | BROOKLYN | 11219
   STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE

2. Buyer Name: 1526 52ND LLC
   LAST NAME / COMPANY | FIRST NAME
   LAST NAME / COMPANY | FIRST NAME

3. Tax Billing Address: Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
   LAST NAME / COMPANY | FIRST NAME
   STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE

4. Indicate the number of Assessment Roll parcels transferred on the deed ___ I ___ # of Parcels OR ☐ Part of a Parcel
   4A. Planning Board Approval - N/A for NYC
   4B. Agricultural District Notice - N/A for NYC

5. Deed Property Size: _____ FRONT FEET X _____ DEPTH OR _____ ACRES
   Check the boxes below as they apply:
   6. Ownership Type is Condominium ☐
   7. New Construction on Vacant Land ☐

8. Seller Name: GREENBAUM | TOVA
   LAST NAME / COMPANY | FIRST NAME
   LEFKOWTIZ | BLUMA
   LAST NAME / COMPANY | FIRST NAME

9. Check the box below which most accurately describes the use of the property at the time of sale:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| A ☐ One Family Residential | C ☐ Residential Vacant Land | E ☐ Commercial | G ☐ Entertainment / Amusement | I ☐ Industrial |
| B ☑ 2 or 3 Family Residential | D ☐ Non-Residential Vacant Land | F ☐ Apartment | H ☐ Community Service | J ☐ Public Service |

**SALE INFORMATION**

10. Sale Contract Date: 4 / 1 / 2014 (Month / Day / Year)

11. Date of Sale / Transfer: 8 / 1 / 2014 (Month / Day / Year)

12. Full Sale Price $ 2,025,000
( Full Sale Price is the total amount paid for the property including personal property.
This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

13. Indicate the value of personal property included in the sale

14. Check one or more of these conditions as applicable to transfer:
   A ☐ Sale Between Relatives or Former Relatives
   B ☐ Sale Between Related Companies or Partners in Business
   C ☐ One of the Buyers is also a Seller
   D ☐ Buyer or Seller is Government Agency or Lending Institution
   E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below)
   F ☐ Sale of Fractional or Less than Fee Interest ( Specify Below )
   G ☐ Significant Change in Property Between Taxable Status and Sale Dates
   H ☐ Sale of Business is Included in Sale Price
   I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below )
   J ☑ None

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

15. Building Class: B 1

16. Total Assessed Value (of all parcels in transfer): 658,20

17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional identifier(s) )
   BROOKLYN 5471 16

2014070300184201 05

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

**BUYER**         7/28/19        **BUYER'S ATTORNEY**

BUYER SIGNATURE    DATE     LAST NAME      FIRST NAME

1526 52ND STREET    1526 52nd LLC
       by: Rivka Ashkenazi, Member

STREET NUMBER    STREET NAME (AFTER SALE)        AREA CODE    TELEPHONE NUMBER

**BROOKLYN**        **SELLER**

CITY OR TOWN    NY    11219    SELLER SIGNATURE       DATE 7/28/19
      STATE    ZIP CODE

Tova Greenbaum

Form RP-5217 NYC                                                          ATTACHMENT

Grantee (Buyer)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantor (Seller)

| LEFKOWITZ | BLUMA |
|---|---|

LAST NAME / COMPANY    FIRST NAME

Grantee (Buyer)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantor (Seller)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantee (Buyer)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantor (Seller)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantee (Buyer)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantor (Seller)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantee (Buyer)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantor (Seller)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantee (Buyer)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantor (Seller)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantee (Buyer)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

Grantor (Seller)

| LAST NAME / COMPANY | FIRST NAME |
|---|---|

LAST NAME / COMPANY    FIRST NAME

201407030018420105

Form RP-5217 NYC                                                                    ATTACHMENT

# CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYERS**                                          **SELLERS**

| Buyer Signature | Date | Seller Signature | Date |
|---|---|---|---|
| | 7/28/14 | *Tola Leikowitz* | 7/28/14 |
| Buyer Signature | Date | Seller Signature *a/k/a Tola Leikowitz* | 7/28/14 |
| Buyer Signature | Date | *a/k/a Bluma Leikowitz* Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |

Affidavit of Compliance with Smoke Detector Requirement for One and Two Family Dwellings

## AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York    )
                     ) SS.:
County of   Kings    )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of
the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 1526 52ND   STREET | | Unit/Apt. |
|---|---|---|
| Street Address | | |

| BROOKLYN | New York, | 5471 | 16 | (the "Premises"); |
|---|---|---|---|---|
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or
two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in
compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of
the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The
signatures of at least one grantor and one grantee are required, and must be notarized).

Bluma Lefkowitz
a/k/a Bluma Lefkowitz / Tova Greenbaum    1526 52nd   LLC
Name of Grantor (Type or Print)    Name of Grantee (Type or Print)

Signature of Grantor    Signature of Grantee

Sworn to before me    Sworn to before me
this __28__ date of __JULY__    20_19    this __28__ date of __JULY__    20_18

NORMAN SEIDENFELD    NORMAN SEIDENFELD
Notary Public, State of New York    Notary Public, State of New York
No. 02SE4961228    No. 02SE4961228
Qualified in Kings County    Qualified in Kings County
Commission Expires January 29, 20_19    Commission Expires January 29, 20_18

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as
a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY
6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A
COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING,
WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1

2014070300184101